UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

PETER TINKHAM

V.                                                CIVIL ACTION

DOREEN R. KELLY                              NO: 05-10470 MLW

PLAINTIFFS' MOTION IN OPPOSITION TO DEFENDANTS'

MOTION TO DISMISS

Plaintiffs Peter Tinkham, Juliet Alexander and Samantha Tinkham, pro se, hereby move to oppose  School Defendants' Motion to Dismiss brought under Rule 41(b).  As grounds therefore, Plaintiffs  state:

1.    Defendants have asserted precisely that species of transparent objection to which Plaintiffs should not be required to respond.  Defendants are not permitted, as a rule, to make up Plaintiffs' case for them and then petition the Court to throw it out.

> First, they grossly misread Rule 17(c) in order to claim that Plaintiffs are violating it by representing their daughter. Rule 17(c), of course, says no such thing.

> Second, they relentlessly object to the length of the Complaint and then coyly reference 41(b) cases that concern amended complaints.

> Third, they complain that although there are too many facts on too many pages, there are "no facts suggestive of motive" which Plaintiffs are under no obligation to provide.

> Fourth, they introduce so much "new matter" that the motion begins to take on the aroma of summary judgement. Defendants' contrived and inaccurate recitation of "what appears" to be Plaintiffs' rationale in bringing suit is matched only by their belabored and inaccurate description of their own credentials.

2.    The sole motivation for Plaintiffs' Complaint is clearly adduced from the Complaint. It was  School Defendants' propensity to conduct a pattern of racketeering activities from the premises of a public elementary school and injuring Plaintiffs in the process.

3.    The second and third claims, most of which do not even concern "School Defendants" are simply the enumeration of the overt acts of the conspiracy alleged in paragraph 113 under different or alternative legal theories as Plaintiffs are clearly entitled to do under Rule 8(e) (2).

4.    Lastly, dismissal under Rule 41(b) was clearly intended by the draftsmen of the rule to be a harsh sanction reserved for extreme situations demonstrating a clear record of delay or contumacious conduct by the Plaintiff. It is a dismissal that operates as an adjudication on the merits and therefore presupposes orders that have been given by the Court and disobeyed by the Plaintiff.

See: Martens v. Thomann (273 F.3d 159, 180-182 (2nd Cir. 2001)).
      Selletti v. Carey (173 F. 3d. 104, 111-113 (2nd Civ., 1999)).

5.    "School Defendants" are perfectly aware that no order by any Court has been either given or contumaciously rejected in this case.

6.    It is clear that by moving under Rule 41(b), School Defendants' Motion to Dismiss does not meet the duty of diligence or candor; gives rise to the presumption that it was filed solely to vex pro se Plaintiffs; is wholly inappropriate on its face and should be denied with prejudice.

The grounds favoring denial are more fully set forth below.

Part One: As to School Defendants' objection that Plaintiffs have violated Rule 17(c):

7.    Fed. R. Civ. P. 17(c) emphatically does not prohibit parents from representing their minor children in Federal Court.

See: Gonzalez-Jimenez v. U.S. (D.C. Fla. 2002, 231 F. Supp. 2d. 1187). "When a parent brings an action on behalf of a child and it is evident that the interests of each are the same, no need exists for someone other than the parent to represent the child's interest."

8.    The first sentence of Rule 17(c) provides that whenever an infant or incompetent person has a representative such as a general guardian, committee, conservator or other fiduciary, the representative may sue or defend on behalf of the infant or incompetent.

9.    Webster's 2nd International Unabridged English Dictionary on p. 1111, clearly defines the word "guardian" in the legal sense as denoting the father and mother of all children under age 14.

See: Kedra v. City of Philadelphia (D.C. Pa. 1978, 454 F. Supp. 652). "In an action brought by minor children although the mother was asserting no rights of her own with respect to the children's claims, she could maintain the action as their representative since they lacked the capacity to sue."

10.    A parent is clearly a representative of his child. He is a general guardian, who is also a conservator and fiduciary of his child; and when there are two parents, presto! a committee.

See: Communities for Equity v. Michigan High School Athletic Ass'n (D.C. Mich. 1998, 26 F. Supp. 2d 1001). "Parent qualified as a general guardian who may sue on behalf of a minor w/o needing a formal Court appointment."

See: Bergstreser v. Mitchell (D.C. Mo. 1977, 448 F. Supp. 10). "Claims for damages on behalf of an infant ... properly were brought by the infant's mother as the natural guardian of the infant, even though the mother has not been appointed next friend or guardian ad litem."

11.    It is regrettably true that some legal opinions can be found - indeed, Defendants have found a few -- that have been relied on by plaintiffs and defendants alike to discourage them from exercising their important constitutional right. However, that does not mean that these legal opinions are right or just in every instance or binding upon Plaintiffs in this case.

12.    The second sentence of Rule 17(c) further provides that an infant or incompetent person who does not have a general representative may sue by his next friend or guardian ad litem.

See: Noe v. True (C.A. 6th, 1974, 507 F.2d 9). A guardian ad litem is defined as "having the authority to file suit and to prosecute, control and direct the litigation. As an officer of the Court, the guardian ad litem has full responsibility to assist the Court to secure a just, speedy, and INEXPENSIVE (emphasis supplied) determination of the action."

13.    There is no difference between a next friend and a guardian ad litem, no special requirements are needed, and suit may be brought under Rule 17(c) by either. (Federal Practice and Procedure, Vol. 6A, p. 512.)

See: Schuppin v. Unification Church (D.C. Vt. 1977, 435 F. Supp. 603). "Affirmed without opinion that no special requirements were needed."

See: Child v. Beame (D.C. N.Y. 1976, 412 F. Supp. 593). "Rule 17(c) is broad enough to include anyone who has an interest in the welfare of an infant who may have a grievance or cause of action."

See: Till v. Hartford Accident & Indemnity, Co. (C.A. 10th, 1941 124 F. 2d 405). "When minors who had instituted state court action through their next friends were sued in Federal Court and the same friends were named as defendants and appeared on behalf of the minors, Rule 17(c) was substantially complied with."

14.     Both Rule 17(c) and a plethora of cases emphasize that the appointment of a guardian ad litem or next friend is confined to those cases where an infant or incompetent person is not otherwise represented in the action by a general guardian.

See: In the matter of Chicago, Rock Island & Pacific R.R. Co. (C.A. 7th, 1986, 788 F. 2d 1280). "District Court had no duty to appoint a guardian ad lietm to represent minor ... when there was no showing that the mother could not adequately represent the minor's interests."

See: Burke v. Smith (C.A. 11th 2001, 252 F. 3d 1360). "District Court was not required to consider whether to appoint a guardian ad litem for a minor daughter who brought a wrongful death action by and through her mother ... no inherent conflict of interest existed since the mother was also a plaintiff and had similar interests to her daughter."

See: Seibels, Bruce & Co. v. Nicke (D.C. N.C. 1996 168 F. R.D. 542, 543). "Appointment of a guardian ad litem to represent minor is not required ... and there is no indication that the parent would not, or could not, represent minor even if minor's claim may be lost by default, parent is presumed to act in the best interest of the child."

See: Southern Ohio Savings Bank v. Guaranty Trust (D.C. NY 1939, 27 F. Supp. 485, 486).

15.     It is abundantly clear from the above-referenced cases that parents who are general guardians, conservators, fiduciaries and, in most cases, friends of their minor children, retain all the rights of a guardian ad litem or next friend to "prosecute, control, and direct litigation" on behalf of their children.

16.     Plaintiffs must, therefore, be permitted, indeed it is their unalloyed right, under both the Federal Rules and the Federal Constitution, to represent their child in Federal Court actions when no serious question of their mental competence is raised so as to require a collateral judicial inquiry. If evidence is adduced (from someone other than the opposing party) which raises a substantial issue as to capacity, the Court is perfectly capable of entering an appropriate order pursuant to Rule 17(c).

4

Part Two: As to "School Defendants" objection that Plaintiffs Complaint is too long and too confusing:

17.    Notwithstanding its length, Plaintiffs' Complaint conforms to the spirit, if not the form of the short and plain requirement of Rule 8. It is a plain statement of facts framed with reference to the heightened pleading standard that continues, even post Swierkiewicz v. Sorema, to be exacted from plaintiffs who bring claims under 18 U.S.C. section 1961(d) nd 42 U.S.C. sections 1983, 5, and 6.

18.    In addition, Plaintiffs constructed their complaint anticipating, appropriately under the circumstances, a heightened pleading standard for claims involving conspiracy and qualified immunity. It is patently not a disorganized, rambling, prolix disquisition, but instead sets forth concisely, and with a fair degree of certainty, the substantive facts relied upon to meet the above-referenced heightened pleading standards and constitutes, therefore, a meritorious cause of action.

19.    CASES CONCERNING HEIGHTENED PLEADING REQUIREMENTS PRE SWIERKIEWICZ V. SOREMA.

FRAUD: Bly-Magee v. California (236 F. 3d 1014, 1019 (4th Cir. 2001)). "Dismissal for failure to plead fraud with particularity affirmed when Plaintiff provided no details of alleged fraudulent statements."

CONSPIRACY: Henrise v. Horwath (D.C. Tex. 2000, 94 F. Supp. 2d 765) "Complaint must state elements of a conspiracy claim; state which facts establish which elements; and state specifically how the conduct of each defendant furthered or accomplished the alleged conspiracy."

RICO: Living Music Records v. The Moss Music Group, Inc., (D.C. NY 1993, 827. F. Supp. 974). "Allegations of RICO predicate acts of mail fraud and wire fraud must include factual evidence of the content, time, place, and author of each alleged mailing or wire transmission and Plaintiffs must demonstrate how each purported mailing or wire transmission furthered the alleged fraudulent scheme."

Moravian Dev. Corp. v. Dow Chem. Co. (D.C. Pa. 1986, 651 F. Supp. 144). "Defendants Motion to Dismiss a civil RICO conspiracy complaint for lack of specificity in the pleading was denied w/o prejudice. Defendant was permitted to renew the motion after Plaintiff completed discovery and amended complaint."

CIVIL RIGHTS: Adams v. Franklin (D.C. Ala. 2000, 111 F. Supp. 2d 1255) "Eleventh Circuit has tightened pleading requirements in civil rights cases against public employees sued in their individual capacity and

5

factual detail is necessary to allow the Court to see that allegedly violated right clearly was established when wrongful act occurred."

QUALIFIED IMMUNITY: Hicks v. Brysch (D.C. Tex. 1997, 989 F. Supp. 797). "Heightened pleading and discovery standards for section 1983 plaintiffs attempting to overcome qualified immunity defense apply to pro se litigants."

20.     CASES POST SWIERKIEWICZ V. SOREMA

CIVIL RIGHTS: Doe ex rel. Doe v. School Dist. of City of Norfolk (C.A. 8th 2003, 340 F. 3d 605). "Although plaintiffs do not need to plead specific existence of unconstitutional policy or custom, at a minimum, they must allege facts from which one could draw inferences supporting the existence of unconstitutional policy."

RICO: Burdett v. Harrah's Kansas Casino Corp. (D.C. Kan. 2003, 260 F. Supp. 2d 1109). "Although a plaintiff need only provide notice of the elements of a RICO violation, the elements are deceptively simple … because each concept is a term of art which carries its own inherent requirements of particularity."

21.     From the above list of case extracts (by no means all that were available to Plaintiffs) before and after the Supreme Court allegedly made a clean sweep of all heightened pleading requirements not statutorily authorized, (see Swierkiewicz) no Plaintiff who seeks to prevail in a judgment on the pleadings motion, a failure to state a claim motion or a combination summary judgment motion would fail to cross every "t" and dot every "i" when bringing any claim under any of the above mentioned, judicially disfavored, statutes. In view of the inherently unstable position of the relevant case law, Plaintiffs have relied on the following case as their guide:

Martin v. Ezeagu (D.C. D. C. 1993, 816 F. Supp. 20, 26 N.3). "Heightened pleading standard requires no more than that the Plaintiff tell his story, relating pertinent information that is already in his possession."

Part Three: As to ‘School Defendants’ objection that Plaintiffs’ Complaint is too confusing:

22.     All pleadings, even pro se pleadings shall be so construed as to do substantial justice. Fed. R. Cir. P. 8(f) requires decisions to be made on the merits and not on the perceived procedural blunders of plaintiffs. This is the heart and soul of the Federal Rules.

6

See: Sonnino v. University of Kansas Hospital Authority (D.C. Kan. 2003, 2003 WL 1562551). "It is apparent that the Courts correctly focus on the quality and not exclusively the tonnage of the complaint."

See: Davis v. Ruby Foods, Inc. (269 F. 3d 818, 820 (7th Cir. 2001). "Although it is possible for a complaint to be too verbose and lengthy, if it is not impenetrable, it should not be dismissed for failure to comply with Rule 8, as long as it is intelligible and gives notice of the claims for relief."

23.    "School Defendants" have most certainly been given fair notice of the claims against them and the epistemological foundation upon which they rest, although one would never know it from reading Defendants' motion. It is clear from reading their memorandum that "School Defendants" are able to count the number of paragraphs in a complaint, but they appear to be incapable of grasping their content.

24.    Plaintiffs have submitted three separate claims as they are permitted to do under Rule 8 (e) (2), viz., "A pleader may state the same claim alternatively or hypothetically in the same count or in separate counts."

The Complaint in Chief consists of four RICO counts which clearly identify some and, in one count, all, of fifteen Defendants; is 20 pages long, and contains 87 substantive paragraphs. That's an average of five paragraphs per Defendant.

The Complaint's second claim, the first part (1983) of which does not even concern "School Defendants", is simply the enumeration, under an alternative legal theory, of the overt acts committed by clearly identified Defendants in furtherance of the conspiracy alleged in paragraph 113 of the Complaint in Chief. It is 14 pages long and contains 48 substantive paragraphs.

Ditto the third claim, which excluding the count for injunctive relief is four pages long and contains nine substantive paragraphs.

25.    CASES IN SUPPORT OF PLAINTIFFS' POSITION

See: Morgan v. Kobrin Secs, Inc. (D.C. Ill. 1986, 649 F. Supp. 1023, 1027). "An eighty-eight page complaint was not defective for failure to contain a short and plain statement when five plaintiffs were raising thirteen separate claims against fifteen separate defendants."

See: Honorable v. The Easy Life Real Estate Sys., Inc. (D.C. Ill. 1998, 182 F. R.D. 553). "Plaintiff filed a 167 page complaint alleging, inter alia, two racketeering counts under RICO and two counts of fraud. When a

complaint is necessarily lengthy, but still is straightforward, it should not
be dismissed."

See: Global Crossing, Ltd. Secs. Litigation (D.C. NY 2003, 2003 WL
22999478). "Although complaint contained 840 paragraphs spread over
326 pages, complaint asserted a large . number of claims against myriad
Defendants, all arising out of particularly complex accounting fraud and,
therefore, it was understandable that complaint was quite large."

See: Magluta v. Samples (C.A. 11th, 2001, 256F. 3d 1282). "The Court
of Appeals vacated a dismissal for failure to comply with Rule 8 ...
because serious constitutional issues should not be decided on the
technicality of the pleadings.''

See: Spriggs v. Seaton (C.A. 10th, 1959, 271 F. 2d 5u3). "A complaint
that was clear and not confusing would not be dismissed because it was
long and, in some regards, unnecessarily detailed."

See: Burke v. Dowling (D.C. NY. 1995, 944 F. Supp. 1036, 1049).
"Absent extraordinary circumstances, it is an abuse of discretion for a
Court to dismiss a complaint under Rule 8 without granting leave to
amend."

See: Tufano v. One Toms Point Lane, Corp. (D.C. NY. 1999 64 F. Supp.
2d. 119). "Leave to replead should be liberally granted to pro se
litigants."

Part Four:    As to  School Defendants' improper inclusion of new matter in their
              memorandum.

26.    Defendants' "new matter " is as follows:

27.    Plaintiffs' Complaint "appears" to arise out of a "dispute" involving issues
       of "home schooling."

28.    Plaintiffs' minor child was educated at home by a school supplied tutor
       and by her parents through a "home schooling program."

29.    Plaintiffs "appear" to have included as Defendants nearly all individuals
       they ever "came in contact with" concerning their daughters' education.

30.    Defendant Mintzer was "allegedly" Defendant Kelly's attorney.

31.    That Defendant Kyed was Plaintiff Samantha Tinkham's only tutor.

8

32.    Plaintiffs have included a "dizzying array" of schemes in their Complaint,
       rich in allegations.

33.    Plaintiffs' Complaint contains no facts suggestive of motive.

34.    Plaintiffs, therefore, confute new matter seriatem:

35.    Plaintiffs' Complaint clearly establishes its ground,viz., racketeering and
       constitutional violations.

36.    Plaintiffs' minor child was not educated at home by her parents in the
       Spring of 2001 through a home school program.

37.    Significant persons concerned with Plaintiffs' minor child's education
       who are not Defendants in their Complaint are: Thomas La Grasta,
       Superintendent; Eileen Ford, third grade teacher; Edna O'Brien, Director
       of Special Education; Jennifer Bishop, fourth grade teacher; Edna Rebello,
       primary tutor.

38.    Defendant Mintzer identifies himself as Defendant Kelly's counsel in a
       May 15, 2001 letter to Plaintiffs.

39.    Defendand Kyed was not Samantha Tinkham's primary tutor.

40.    Plaintiffs' Complaint lists 3 separate predatory racketeering schemes by
       "School Defendants " on page    of their complaint.

41.    As to motive, Defendant. memorandum's conclusory and quite obviously
       wrong speculations about Defendant Kelly's motivation (a subject rife
       with factual elements) totally ignores the reality that elementary school
       principals and DSS supervisors may have a wide range of objectives in
       orchestrating their respective employees and in cementing a bond (with
       the indispensable aid of a lawyer) between the two agencies.

42.    Defendants' conclusory memorandum also ignores the reality that scoring
       with one's higher-ups; in preventing unnecessary expenditures (so dear to
       bureaucrats everywhere); in securing competitive advantage over other
       parents of disabled children who might be lining up for the same
       expenditure; or just retaining one's job under such a principal often
       overpowers individual consciences.

43.    It is conduct not status that is at the heart of civil RICO; conduct with
       impunity. Congress knew that this combination would eventually bring
       every profession under the discerning eye of RICO. Give a human being
       impunity and there is no act however disgraceful or criminal that he will
       not convince himself he is duty bound to commit.

44. Plaintiffs may be first to hale an elementary school principal with an impressive string of Ph.d Defendants behind her into Federal Court, but they most assuredly will not be the last.

45. So many constitutional pillars have been knocked over in Defendants' pursuit of their racketeering agenda that to simply list them as Plaintiffs do in their second claim hardly conveys the bizarre incoherence, the portentous nullity and the sheer bad faith of it all, or the grave implications for public policy if such conduct is not severely curtailed.

46. Just because Defendants are "professionals" and such conduct might seem "implausible" is not a sufficiently compelling reason that the Court should not permit Plaintiffs to put their case before a jury who can decide among themselves if these Defendants were indeed guilty of racketeering in its purest form as Plaintiffs claim.

                    Request for Oral Argument

If oral argument will assist the Court, Plaintiffs are prepared to give it.


Respectfully submitted,

                                        *Peter Tinkham*

                                   Peter Tinkham, pro se

                                   August 6, 2005
                                   P.O.Box 1075
                                   Easton, Ma  02334
                                   207-364-3964



       I hereby certify that a true copy of the above document was served upon the attorney of record for the other party by mail on August 6, 2005.

10.