UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER TINKHAM, JULIET ALEXANDER,
and SAMANTHA TINKHAM, pro se,
     Plaintiffs,
v.

DOREEN R. KELLY, BARRY L.
MINTZER, JEAN CURTIS LOUD,
ROBERT L. DOYLE, DONNA KYED,
MARGARET VERRET, JOAN
BERNHEIMER, JUDI ALBERTON,
CLAIRE JACKSON, ERIN L. SENGES,
BARBARA A. HAWKES-SULLIVAN,
BARNEY KEEZELL, STEPHANIE
THOMAS BROWN, ERICA COHEN, and
KENNETH PONTES,
     Defendants.

CIVIL ACTION
NO. 05-10470-MLW

## MOTION OF DEFENDANTS ERIN L. SENGES, BARBARA A. HAWKES-SULLIVAN, BARNEY KEEZELL, STEPHANIE THOMAS BROWN, ERICA COHEN, AND KENNETH PONTES PURSUANT TO FED. RR. CIV. P. 12(b)(1), (6) TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

_____Purely as a matter of law, Plaintiffs cannot, on their allegations, have been investigated for criminal conduct or listed as alleged perpetrators. Plaintiffs complain of injuries they never sustained, are without standing , and confer no jurisdiction on the Court.

The Complaint is furthermore barred by the "domestic relations exception" to federal jurisdiction.

Further and independently fatal is that Plaintiffs have yet to invoke even the first, administrative, level of comprehensive state remedies available to them, never mind state judicial review. They have not been deprived of rights; to the contrary, they have chosen not to exercise

them.

Finally, Plaintiffs' allegations that all Defendants participated in a RICO scheme are based on threadbare conclusions and characterizations of conduct that was clearly nothing more than the normal, usual concern of school authorities for a child not doing well in school, which DSS looked into upon a mandated school official's report. The allegations of fraud being almost entirely conclusory instead of factual, the entire Complaint fails under Fed. R. Civ. P. 9.

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants ERIN L. SENGES, BARBARA A. (HAWKES) SULLIVAN, BARNEY KEEZELL, STEPHANIE THOMAS BROWN, ERICA COHEN, and KENNETH PONTES (the "DSS Defendants") move to dismiss the Complaint pursuant to Fed. RR. Civ. P, 12(b)(1), (9), for lack of subject matter jurisdiction and failure to state a claim for relief.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2

Please see attached Certificate with Affidavit of Stephen Dick.

## FACTS ALLEGED

Plaintiffs Tinkham and Alexander are the adoptive parents of Plaintiff Samantha Tinkham. Complaint ¶¶8, 10, 11.[1]

Plaintiffs allege that, in March, 2002, they were "'investigated'" by DSS, "found guilty without benefit of trial," ¶33, of the neglect of Samantha, ¶¶130, 148, 155a, 159, and listed as

---

[1]The DSS Defendants join with the Motion to Dismiss filed on July 27, 2005. The DSS Defendants reiterate the argument in the July 27th filing that the Complaint of Samantha, a minor child, who cannot appear pro se and cannot be represented by her lay parents, must be dismissed. The parents misconstrue this principle in their opposition to the Motion, citing authority that parents may sue on behalf of their minor children. This is of course correct but irrelevant, as lay persons may "bring" actions on their children's behalf, but may not act as their children's, or anyone's, attorneys.

perpetrators in the central registry. ¶¶133, 163.

This "investigation" and "prosecution" deprived Plaintiffs of their rights under, among others, the first, fifth, and ninth amendments, ¶15(e), third amendment, ¶163, and fourteenth amendment, ¶165, and amounted to an "administrative Bill of Attainder," ¶171b, all as part of a conspiracy among and between educators in Sharon MA, and DSS officials, e.g., ¶14, to deprive Plaintiffs of their liberty and property. ¶175. The conspiracy involved acts of mail fraud, 18 USC 1341; wire fraud, 18 USC 1343, extortion, 18 USC 1951, obstruction, 18 USC 1503, subversion, 18 USC 1510, 1952 and conspiracy,18 USC 1962. ¶¶43, 111.

These acts amount to a pattern of racketeering under the Racketeer Influenced Corrupt Organizations Act (RICO). 18 USC 1961 et seq. ¶¶44, 46.

The case concerns a dispute between Plaintiffs on the one hand, and Samantha's school and DSS on the other, concerning what school authorities contended was her parents' refusal to cooperate in Samantha's proper education, and obstruction of the school's effort to place the girl in special ed classes.

In September, 2000, ¶17, Samantha entered the Cottage Street Elementary School in Sharon MA. ¶19,[2] with an undescribed "cosmetic disfigurement."¶17. She was knocked unconscious on her first day, *id*., persecuted and humiliated by her classmates, ¶18, and went backwards academically for the next six months. ¶17. Her teacher was unable to control the classroom pandemonium, ¶18, which means that the school principal, defendant Donna Kelly, ¶20, was incompetent. ¶19.

_____

[2]Samantha was two years old in 1992. ¶10. She was therefore 10 when she first entered school in 2000.

The classroom pandemonium caused by Kelly's management incompetence exacerbated the metabolic disorder which caused Samantha's disfigurement. ¶19. In February, 2001, Samantha "ripped almost all of the hair on the top of her head and piled it under her desk." *Id.* This led to a consultation among Plaintiffs and defendant Kelly. ¶20 Ms. Kelly told Plaintiffs that Samantha had been isolated and shunned for months, *id.*, often wept uncontrollably, *id.*, and threw her lunch away uneaten. *Id.* Plaintiffs "weighed [Samantha] as a result of the conversation and noted a 12-pound weight loss."[3]

Plaintiffs interpret -- or claim they interpret -- Ms. Kelly's efforts to help Samantha as a self-serving conspiracy:

> This "crisis" had made [Plaintiffs] defacto members
> of a discrete category of parents who are intuitively
> and unreasonably despised by school principals and
> not a little feared.

¶23a.

Plaintiffs claim that the Sharon public schools "custom" of enrolling problem students in special education classes was a ruse to protect the "principal's financial bottom line." ¶23c. Out of fear that Plaintiffs' requests for private tutoring might deprive Kelly of the money "she can spend on herself and her pet projects," ¶24, Kelly determined to enroll Samantha in special ed "by whatever means necessary." *Id.* Kelly approved such a plan in March, 2001. *Id.*

Plaintiffs allege that placing Samantha in special ed rather than private tutoring generated a "defacto income" of "well over $75, 000," for Kelly, ¶26, from a pattern of racketeering activity, ¶105, which money was, "in fact, the property of the Plaintiffs," *id.*, though they do not

---

[3]How Plaintiffs had failed to notice a 12-pound weight loss in their 10-year-old between September, 2000 and February 2001 is not alleged.

allege how.

In November, 2001, the Sharon school system assigned Samantha a home tutor, ¶28, for the balance of the school year until June 18, 2002. **Plaintiffs' Exhibit K, Letter to Plaintiffs from Defendant Doreen R. Kelly, Principal, Cottage Street School.**

As of February, 2002, Plaintiffs still refused to place Samantha in special education classes, ¶27, despite such manifest problems as her weight loss and hair-tearing. The school reported Plaintiffs' recalcitrance to DSS. ¶29.

Plaintiffs allege that in March, 2002, DSS Defendant Erin Senges informed them "that charges of child abuse have been filed against them."¶122.[4] The report alleged that Plaintiffs refused to allow a Special Education evaluation, ¶123a; that Samantha was two years behind in school, ¶123b; that the parents forbade Samantha from writing cursive script, ¶123d; refused to consent to communication between school personnel and Samantha's doctors, ¶123e; were administering unprescribed medications, ¶123g; and providing Samantha no therapy for her disorder. ¶123h.

Plaintiffs claim to have been "'investigated' on the credit of a general warrant," and "prosecuted" by DSS. ¶33. They say that on March 6, 2002, Defendant Senges visited their home "without a warrant." ¶126. There, she searched for "the fruits and instrumentalities of a crime." ¶127. She also "seized" Samantha, brought the child to her bedroom, shut the door, and

---

[4]In fact, the communication referred to was a form notice of home visitation. **Plaintiffs' Exhibit L.** The boilerplate recites that "DSS has received a report that your child(ren) <u>may have been</u> abused or neglected." *Id.* (Emphasis added). The specific allegation is of neglect only. *Id.* The paper does not charge Plaintiffs with anything; it merely informs them of an impending home visit.

interrogated her for 25 minutes. ¶127.[5]

Although Ms. Senges saw no evidence of abuse or neglect, ¶¶128, 129, DSS Defendant Barbara (Hawkes) Sullivan insisted that the report be supported. ¶130. Defendant Senges advised Plaintiffs to "'cooperate' with this verdict or 'things will get messy.'" ¶130.

In April of 2002, DSS Defendant Stephanie Thomas took over the case, ¶131, and proposed to "interrogate[]" Plaintiffs. ¶132. When Plaintiffs refused to be "interrogated." ¶¶ 132, 133,  Thomas caused them to be listed as alleged perpetrators in the central registry, ¶133, and Plaintiffs were "sentenced to life registration as 'perpetrators.'" ¶33.

DSS closed Plaintiffs' case a year after opening it, in March, 2003. ¶34.

Plaintiffs allege that all Defendants -- DSS and Sharon school officials -- conspired to "prosecute" them, deprive them of liberty, property and their daughter through a concerted scheme of federal and other crimes sufficient to form a RICO predicate.

---

[5]There is no allegation that Plaintiffs attempted to protect their child before or during this alleged seizure, or notified law enforcement.

ARGUMENT[6]

I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF JURISDICTION.

A.    **Plaintiffs Are Not Cognizably Uninjured and Are Without Standing to Sue.**

1.    <u>Standing is jurisdictional and requires injury</u>.

The federal courts being courts of limited jurisdiction, *Rhode Island v. EPA*, 378 F.3d 19,

22 (1st Cir. 2004), federal plaintiffs have the burden to plead and prove standing as "an

---

[6]On a Motion to Dismiss, a complaint is given a deferential reading and  "the threshold demands on the pleader are low." *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 23 (1st Cir. 1991).  Pro se pleadings are <u>more</u> liberally construed against even <u>less</u> stringent standards. *Hurney v. Carver*, 602 F.2d 993, 995 (1st Cir. 1979).  Furthermore, where the pleading is merely "inartful," a motion to dismiss is not the proper remedy.  *Sisbarro v. Warden, Massachusetts State Penitentiary*, 592 F.2d 1, 2 (1st Cir. 1979)

Nevertheless, the pleading rules are "not entirely toothless." *Fleming*, 922 F.2d at 23, and the "minimal requirements are not tantamount to nonexistent requirements." *Gilbert v. Cambridge*, 932 F.2d 51, 62 (1st Cir. 1991).  Even in the <u>pro se</u> setting, a trial court is simply not required to go so far as to "conjure up unpleaded facts to support conclusory allegations." *Hurney*,  602 F.2d at 995; *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979).   A plaintiff must set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'"  *Roth v. United States*, 952 F.2d 611, 613 (1st Cir. 1991), quoting, *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).  The plaintiff cannot rely upon "subjective characterizations or unsubstantiated conclusions.  *Fleming*, 922 F.2d at 23.  "Empirically unverifiable' conclusions, not logically compelled, or at least supported by the stated facts," deserve no deference. *United States v. AVX Corp.*, 962 F.2d 108, 114 n.8 (1st Cir. 1992); *Dartmouth Review*,  889 F.2d at 16.  The deference due the allegations of a complaint does not extend to "self-serving generalities" or "unsubstantiated conclusions." *Gilbert*, 932 F.2d at 62.  "[O]nly when conclusions are supported by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, [do] 'conclusions' become 'facts' for pleading purposes."  Id.

"A reviewing court 'need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' *Correa Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990), even when such phantoms are robed by the pleader in the guise of facts.  We have been particularly insistent in section 1983 cases to require a fair degree of specificity -- a foundation of material facts -- to survive a motion to dismiss." *Gilbert*, 932 F.2d at 62, citing, *Dewey v. University of New Hampshire*, 694 F. 2, 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983), *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977), cert. denied, 434 U.S. 1077 (1978).

indispensable component of federal court jurisdiction." *Osediacz v. City of Cranston*, 2005 WL

1575628 (1st Cir. 2005) (headnotes 1,2), citing *Allen v. Wright*, 468 U.S. 727, 750 (1985).

Standing requires the three-part showing of (1) injury, (2) traceable to defendant's

conduct, (3) redressable by the relief sought. *Osediacz*, (hn 3,4,5), citing *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992).

> 2.       As a matter of law, Plaintiffs have not sustained the injuries they allege, i.e.,
> "prosecution," criminal investigation, and listing as "perpetrators, because
> they do not allege a referral to the District Attorney, or that they were
> reported for such crimes as murder sexual abuse exploitation  or causing
> brain damage or other such serious injury, but merely of not properly seeing
> to Samantha's educational needs.

Stripped to its essentials, the Complaint attempts to gin up allegations that Plaintiffs were

branded as criminals, unconstitutionally, without trial or process, and placed on the list of alleged

perpetrators,[7] after a criminal investigation that violated their constitutional rights, all effected by

a RICO conspiracy.

As a matter of law, there was no criminal investigation, no criminal accusation, and

Plaintiffs cannot have been placed on the Registry of Alleged Perpetrators.

Abusers are placed on the list of alleged perpetrators only when the abuse allegations

against them have been referred to the District Attorney. 110 CMR 4.37; G.L. c. 119, §51B(4).

Such allegations must be of death, sexual assault, brain damage or other major impairment,

sexual exploitation, or serious physical abuse or injury to the child. *Id*; 110 CMR 4.51.  The

---

[7]The Registry of Alleged Perpetrators is a component of the Central Registry. 110 CMR 4.36; G.L. c. 119, §51F. The Central Registry contains identifying information of children reported under §§ 51A or 51B, as having been abused or neglected. The Registry of Alleged Perpetrators identifies perpetrators of sexual or serious physical abuse by name, date of birth, Social Security Number, sex address, date of listing, allegation, cross reference to victim, and relationship to victim. 110 CMR 4.36.

report to the District Attorney must be made within five days of the supported decision of the abuse. *Id*.

Plaintiffs were reported for refusing to attend to the educational and emotional needs of their child. They allege that their case was dropped in March, 2003. ¶34. While it may be that their emotional neglect caused their adopted daughter to pull her own hair out, Plaintiffs do not allege that DSS supported or made any finding related to sexual assault, brain damage, or any of the other conduct which must be reported to law enforcement. 110 CMR 4.51. They do not allege that they were reported to the District Attorney. *Id*. They cannot have been placed be on the list of alleged perpetrators.

DSS does not "prosecute." It investigates reports of possible abuse and neglect. G.L. c. 119, §§51A, B.[8] The proceedings are civil, not criminal in nature. *Covell v. Dep't of Social Services*, 42 Mass.App.Ct. 427, 432, 677 N.E.2d 1158 (1997); *Arnone v. Comm'r of DSS*, 43

---

[8] The following explanation of the process is verbatim from *Cobble v. Commissioner of Dept. of Social Services,* 430 Mass. 385, 386 n.3 (1999):

> On receiving a 51A report of possible abuse or neglect, the department is required to investigate and, if it has "reasonable cause" to believe the report, to "support" it and take remedial action, either offering social services, placing the child in protective custody, or referring the matter to the district attorney for criminal prosecution, depending on the severity of the abuse. See, G.L. c. 119, § 51B; 110 Code Mass. Regs. § 4.32(2) (1996). "Reasonable Cause to believe" that abuse has occurred means "a collection of facts, knowledge or observations which tend to support or are consistent with the allegations." 110 Code Mass. Regs. § 4.32(2) (1996). See *Care & Protection of Robert*, 408 Mass. 52, 63, 556 N.E.2d 993 (1990) ("reasonable cause" serves a "threshold function" and means "known or suspected instances of child abuse and neglect").

A decision to "support" a report means only that the department has reason to believe that an incident of child abuse or neglect has occurred and that some caretaker is responsible; it does not constitute a finding with regard to the identity of the perpetrator. 110 Code Mass. Regs. §4.32(2).

Mass.App.Ct. 33, 36, 680 N.E.2d 945 (1997).[9]

Prosecution may or may not ensue upon a report to law enforcement, but no such report is alleged. Nor were Plaintiffs accused of a crime. There was no criminal investigation to "impede," ¶40, or through which to deprive Plaintiffs of their property. *Id.* Defendant Senges's visit to Plaintiffs' home was not part of a criminal investigation, nor did Defendant Senges visit the home on false pretenses or without Plaintiffs' "informed consent." Plaintiffs admitted her to their home as part of the 51B, civil, investigation, the purpose she is alleged to have performed.[10]

Plaintiffs were not, as they claim, branded as "perpetrators." Their allegations are insufficient to support the injuries they allege. They are therefore without standing to sue, *Osediacz*, (hn 3,4,5), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), and confer no jurisdiction on the Court. *Osediacz*, (hn 1,2), citing *Allen*, 468 U.S. at 750 (1985).

---

[9]Allegations sufficient to require a report to the D.A., though civil until the point of prosecution, have nevertheless been regarded as approaching the criminal realm. In *Covell*, a stepfather *was* reported for the sexual abuse of his stepdaughter, listed as a perpetrator, reported to the district attorney, prosecuted, but then acquitted. The Appeals Court neutralized a technical flaw in the stepfather's application for remand to DSS (to present his acquittal) on the ground, *inter alia*, that a listing as a perpetrator, though civil, "verges on the criminal," *Covell*, at 432, promising dire consequences to those listed as perpetrators.

Similarly, *Arnone* held that the evidence of such serious could not be exclusively hearsay -- "particular[ly] the hearsay statements of very young children," given the "criminal overtones" of a finding of emotional maltreatment. *Arnone*, at 36-37.

Here, no finding of sexual abuse -- or of abuse, for that matter -- or of emotional maltreatment, is alleged. No criminal stigma attached to the report that Plaintiffs were uncooperative with school authorities attempting to monitor their daughter's home schooling and emotional well-being.

[10]There is no allegation that Plaintiffs called the police or in any other manner reported the "kidnap" of their stepdaughter into her own room.

-10-

**B.    Plaintiffs Are Equally Without Standing to Seek Declaratory Relief.**

Standing to seek declaratory relief "is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Valley Forge College v. Americans United for Separation of Church & State*, 454 U.S. 464, 486 (1982).   Rather, a plaintiff must point to an "injury in fact" that a favorable judgment will redress. *Harvey v. Veneman*, 396 F.3d 28, 34 (1st Cir. 2005). "[11]

Plaintiffs are thus without standing to seek the declaratory relief they request, at ¶¶ 218-226, because as a matter of law they sustained none of the injuries they allege, at ¶221a, to have arisen from the statute they challenge, G.L. c, 119, §§51A, B, the child protection laws.

Plaintiffs were not "reported."[12] They cannot have been "publicly named,"[13] because all central registry data is "confidential and shall be made available only with the approval of the commissioner or upon court order." G.L. c. 119, §51F. For the same reasons: their "victim" was not publicly named (nor was there a victim);[14] their "activities" were not disclosed;[15] their "guilt" was not "publicly declared,"[16] nor were they prosecuted, tried, or found "guilty" of anything;

---

[11]An asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen*, 468 U.S. at 754.

[12]¶221a

[13]¶221a(1)

[14]In any event, mere damage to reputation does not constitute deprivation of liberty. *Paul v. Davis*, 424 U.S. 693, 701 (1976)

[15]¶221a(2).

[16]¶221a(3).

there was neither "judgment" nor "verdict";[17] there was no "punishment,"[18] and by their own

allegation, the matter was closed a mere year after it opened.

Plaintiffs are without standing to seek declaratory relief, as they have no injuries to seek

relief from, and present no case or controversy to invoke the jurisdiction of an Article III Court.

### C.    The "Domestic Relations Exception" to Federal Jurisdiction Bars This Claim.

Since *Barber v. Barber*, 62 U.S. (21 How.) 582 (1859), the "federal courts have declined

to adjudicate actions for divorce, alimony, child support, child custody, and other 'domestic

relations' matters." Fernos-Lopez v. Figarella Lopez, 929 F.2d 20, 22 (1st Cir.1991), citing,

Gonzalez Canevero v. Rexach, 793 F.2d 417, 418 (1st Cir.1986).  "The domestic relations

exception, as articulated by this Court since *Barber*, divests the federal courts of power to issue

divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703

(1992) (emphasis added). A state's compelling interest in protecting the welfare of children

warrants federal court abstention. *Malachowski v. City of Keene*, 787 F.2d 704 at 708-709 (1st

Cir. 1986), see, *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area

of state concern."), and "federal courts lack power" in this area "because of the special

proficiency developed by state tribunals over the past century and a half in handling issues that

arise in the granting of such decrees." *Ankenbrandt*, 504 U.S. at 704.

This case arises from a report to DSS, under the Massachusetts child protection statutes,

G.L. c. 119, §§51A, B, of Plaintiffs' educational neglect of their adopted child. It is a domestic,

---

[17]¶221a(4).

[18]¶221a(5).

family matter traditionally left to the state courts. The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Even were there federal jurisdiction, the Court should abstain, as a matter of comity, from passing on domestic relations issues, in which the state courts' expertise, experience and familiarity with statutes and regulations in this area are recognized.

## II. HAVING FAILED TO EXHAUST THEIR STATE REMEDIES, PLAINTIFFS HAVE NOT YET BEEN DEPRIVED OF ANY RIGHTS AND STATE NO CIVIL RIGHTS CLAIMS.

Plaintiffs allege deprivation of a panoply of constitutional rights, *inter alia*, due process, equal protection, first, third, fourth, fifth, sixth and fourteenth amendments (under 42 U.S.C. §§1983, 1985, and 1986). ¶5.

In due process complaints, "the constitutional violation actionable under [42 USC §] 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). One "cannot complain of a violation of procedural due process rights when he has made no attempt to avail himself of existing state procedures." *Boston Environmental Sanitation Inspectors Association,* v. *City of Boston*, 794 F.2d 12, 13 (1st Cir. 1986). "It is well-settled that a 'claim of lack of available due process fail[s] on the merits [where] there [is] a process available under state law.' *Id*., citing *Limerick v. Greenwald*, 749 F.2d 97, 99 (1st Cir.1984). Courts are not "'sympathetic to a party who elects to forego the state hearing provided him, and then complains he received none. *Boston Environmental*, 794 F.2d at 13, quoting *Roslindale Cooperative Bank v. Greenwald*, 638 F.2d 258, 261 (1st Cir.), cert. denied, 454 U.S. 831 (1981) . *Economou v. Caldera*, 286 F.3d 144, 149 (2nd Cir. 2002) (complaint alleging discriminatory and retaliatory

removal from Army Corps of Engineers in violation of ADEA, Title VII and Rehabilitation Act

dismissed for failure to exhaust administrative remedies, where plaintiff actually _pursued_ one of

two alternative administrative remedies but fatally switched between them).

In the present case, Plaintiffs have not even invoked the administrative review process,

never mind the comprehensive judicial review statutorily available to all persons aggrieved by

DSS decisions. Although they claim that they have been denied the fair hearing to which they are

entitled, their exhibits -- discussed in detail below -- demonstrate that they have never been thus

denied..[19]

Having invoked no post-deprivation remedies, they have not yet been deprived of rights

and state no claim for federal relief. *Amsden v. Moran*, 904 F.2d 748 754-57 (1st Cir.1990), cert.

denied, 498 U.S. 1041 (1991).[20]

## III.    PLAINTIFFS STATE NO CLAIMS FOR RELIEF UNDER THE RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT (RICO), AS THEIR ALLEGATIONS OF FRAUD ARE INSUFFICIENTLY PLED.

Beside their failure to allege cognizable injury, Plaintiffs RICO claim fails as a matter of

pleading.

Plaintiffs allege wire fraud, mail fraud and fraud as the predicate crimes entitling them to

RICO relief. Fed. R. Civ. P. 9 applies to these allegations in the RICO context just as it does in

---

[19]Why Plaintiffs refuse to schedule the DSS fair hearing that is still available to them -- Affidavit of Compliance With Local Rule 7.1(A)(2) -- is inexplicable.

[20]This will be the basis for Defendants' qualified immunity defense when raised. *Amsden*, 904 F.2d at 754-57(State officials entitled to qualified immunity on procedural due process claims where adequate remedies were available for their alleged improper deprivation of plaintiff's license).

-14-

all pleading. "It is settled in this Circuit that Fed. R. Civ. P. 9(b), which requires pleading with particularity, extends to pleading predicate acts of mail and wire fraud under RICO." *Feinstein v. Resolution Trust Corp.* 942 F.2d 34, 42 (1st Cir. 1991). A plaintiff must "state the time, place and content of the alleged mail and wire communications perpetrating that fraud. *Feinstein*, 942 F.2d at 42, quoting *New England Data Services v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987); *Ahmed v. Rosenblatt,* 118 F.3d 886, 889 (1st Cir. 1997).

Allegations of fraud as predicate to RICO claims "remain subject to the particularity requirements of [Fed. R. Civ. P.] 9(b)." *United States v. Melrose-Wakefield Hospital,* 360 F.3d 220, 227 (1st Cir. 2004). Such allegations are "also subject to the additional requirement that 'the complaint set forth the facts on which the belief is founded.'" *Id*, quoting *New England Data*, 829 F.2d at 288.

The First Circuit recognizes a "relaxed Rule 9(b) standard [under which] fraud may be pled on information and belief." *United States v. Melrose-Wakefield Hospital,* 360 F.3d 220, 228 (1st Cir. 2004). Nevertheless, "we subject 'information and belief' pleading under Rule 9(b) to particularity requirements." "There is, in other words, no relaxation of the particularity requirement for 'information and belief' pleading." *Melrose-Wakefield* at 228. (Emphasis added). That a plaintiff may plead fraud on "information and belief " at all is the "relaxed" approach to 9(b)'s strict, particularity requirement. *Melrose-Wakefield*, 360 F.3d at 228-29. "Relaxation" means fraud may, in certain circumstances, be pled generally, and the complaint amended after discovery. I.e., the plaintiff may

> plead generally at the outset and then later amend the complaint,
> filling in the blanks through discovery.

*Melrose-Wakefield* at 228-29.

However, the circumstances under which fraud may be pleaded this, "relaxed," way are limited to situations "'when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusions.'" *Melrose-Wakefield* at 228-29, quoting *Boston & Maine Corp. v. Hampton*, 987 F.2d 855, 866 (1st Cir. 1993). It is permitted "because of the apparent difficulties in specifically pleading mail and wire fraud as predicate acts...where the specific information concerning the defendants' use of interstate mail or telecommunications facilities is likely in the exclusive control of the defendant." *Melrose-Wakefield* at 229, quoting *North Bridge Association, Inc. v. Boldt*, 274 F.3d 38, 44 (1st Cir. 2001). In such cases, the District Court "'should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint.'" *Melrose-Wakefield* at 229, quoting *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 43 (1st Cir. 1991).

The "relaxed pleading" rule is inapplicable here. The bases of the fraud allegations are letters from Defendants to Plaintiffs, which presumably remain in Plaintiffs' possession. Plaintiffs allege no hidden communications between or among the Defendants themselves which Plaintiffs might at some point have difficulty obtaining Moreover, as discussed below, such of these letters as Plaintiffs attach do not by any standard constitute fraud.

Plaintiffs allege mail and wire fraud at ¶¶ 38-41, 43, 44, 45, etc. They incorrectly contend that these acts are specifically described at "Appendices E, D, C, B, and A."

Appendix A

The only Appendix A allegations against the DSS Plaintiffs occur at ¶XII, and are typical of the pleadings Par. XII alleges a meeting among some DSS Defendants "upon information and belief." The basis for the belief is not given. Pursuant to the plan allegedly hatched at that meeting:

> XIIa. Defendant Senges phones Plaintiffs' doctors to talk them into a
> special education plan for Samantha..

How this can be construed as fraud, and against whom, Plaintiffs do not allege. It is clear from the Complaint that the school authorities want special education attention for this little girl who, by Plaintiffs' own allegations, starves herself and pulls out her own hair.

> XIIb. Defendant Sullivan "fabricates" a statement from Samantha's
> psychiatrist to support charges of "medical neglect."

Appendix B

Appendix B alleges "predicate acts of impeding a criminal investigation." As discussed above, there was no criminal investigation. The only Appendix B reference to the DSS Defendants occurs at Paragraph 2, which paradoxically alleges that the DSS Defendants impeded their own "criminal investigation." Plaintiffs appear to argue that Defendants "expanded" an investigation that might otherwise have found in "Plaintiffs' favor." This is senseless.

Appendices C & D

Appendices C and D allege neither fraud nor any communication via wire or mail, nor the content of any such communication.

Appendix E

Paragraphs 1-19 of Appendix E contain no allegations against the DSS Defendants. The rest of Appendix E offers nothing more than conclusory and argumentative descriptions of

alleged communications. These communications, when Plaintiffs attach them, are always

mischaracterized; on their faces, none are fraudulent.[21]

- **Par. 20 of Appendix E Exhibit L, alleges a "letter" to Plaintiffs from Defendant Senges** which they characterize as notifying them of the pending criminal charges. The "letter" is clearly a form notice of Senges's impending home visit. That there is an allegation of neglect is not accusation of a crime, but Plaintiffs' characterization.

- Par. 21 alleges that Defendant Senges transmitted a letter to Plaintiffs falsely stating that the Department had found reasonable cause to support allegations of neglect. The letter is not attached. The characterization is obviously erroneous because if the letter was false, no neglect was found.

- **Par. 22 alleges Exhibit M, a letter to Plaintiffs from Defendant Barney Keezell, Director of the DSS Fair Hearing Unit**. Plaintiffs mischaracterize this letter as saying they could not receive their fair hearing because of staff early retirement and strained resources. The letter plainly says that Plaintiffs' hearing would merely be delayed because, due to early retirement, DSS was reconfiguring the hearing schedule, but that Plaintiffs would be given a hearing date in the near future. Plaintiffs' alleged reliance on this letter -- "to their very great injury, peril, and loss of their property" -- is unfathomable. The letter deprives Plaintiffs of no rights.

- **Par. 25 alleges Exhibit O, a letter to Plaintiffs from DSS Defendant Erica Cohen, a social worker**. Plaintiffs characterize this letter as "fraudulently" saying that a meeting had not yet been scheduled as well as "fraudulently" saying that Cohen wished to meet with Plaintiffs. Plaintiffs do not say how these statements are false, nor the injury caused by their reliance, and no injury suggests itself.

- **Par. 26 alleges a letter of February 25, 2003 from Defendant Cohen to Plaintiffs' attorney.** Plaintiffs describe this letter as saying that the "Department believes it is appropriate to close your case." The statement is obviously true: Plaintiffs allege that the case was closed the next month. Complaint ¶34.

---

[21]Plaintiffs provide an index of such documents as they attach, immediately following p. 31 of their Appendix, just preceding Exhibit A.

- **Par. 27 alleges Exhibit N, a letter from Defendant Barney Keezel, Fair Hearing Unit director**. Plaintiffs characterize this letter as having deliberately been mailed to the wrong address,. Plaintiffs -- who have litigated this matter from post office boxes, first in Hopkinton MA, now in Easton MA, with a Maine area code -- do not allege their correct address at the time, nor is there any basis to believe that the alleged mistake was deliberate.[22] The letter deprives Plaintiffs of no rights. Plaintiffs' contention that this re-offer of a  fair hearing occurred 940 days after their hearing request is both irrelevant and erroneous: DSS closed the case in March, 2003. Complaint ¶34. At the outside, the delay was 17 months, and the re-offer stands in any event. To whatever extent their names have been besmirched, if at all, Plaintiffs have a complete state remedy.

Appendix E shows DSS personnel trying to do their jobs in a garden-variety allegation of neglect. It alleges nothing that could be remotely described as RICO predicates.

The characterizations of these exhibits, as well as the conclusory, argumentative and plainly wrong pleadings throughout the needlessly huge Complaint do not rise even to the low threshold required for pro se pleaders discussed at note 6, *supra*. Plaintiffs bestow no jurisdiction on the Court, have been deprived of no rights, are not cognizably injured, do not meet the pleading requirements of Fed. R. Civ. P. 9, are barred by the "domestic relations exception," and state no claims for relief, under RICO or any other theory. The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

---

[22]Defendants note that each of the Appendix E paragraphs contain a paragraph headed, "CIRCUMSTANCES OF FRAUD OR MISTAKE." Thus every one of these Paragraphs, though purporting to allege fraud, also admits that the contained facts might allege mere negligence, if any wrong at all. A Complaint that admits that Defendants' alleged conduct <u>might</u> be merely mistaken conduct, fails on its face to allege fraud. For this separate reason, Appendix E cannot serve as the basis of a RICO claim.

## CONCLUSION

For the above reasons, the Court should allow this Motion.

**CERTIFICATE OF SERVICE**

    I certify that I served one true copy each of the above Motion to Dismiss the Complaint upon both Plaintiffs pro se, via first-class mail addressed to Peter Tinkham, PO Box 466, Hopkinton MA 01748-9998, and Juliet Alexander, PO Box 466, Hopkinton MA 01748-9998, on **October 6, 2005**.

_____/s/_____
Stephen Dick

Defendants,
Erin L. Senges, Barbara A. Hawkes-Sullivan, Barney Keezell, Stephanie Thomas Brown, and Erica Cohen

By Their Attorney,

_____/s/_____
Stephen Dick, BBO #560508
Assistant Attorney General
Trial Division/Government Bureau
1 Ashburton Place
Boston MA 02108
617-727-2200
Fax: 617-727-3076
stephen.dick@ago.state.ma.us

M.G.L.A. 119 § 51A

MASSACHUSETTS GENERAL LAWS ANNOTATED
PART I. ADMINISTRATION OF THE GOVERNMENT
TITLE XVII. PUBLIC WELFARE
CHAPTER 119. PROTECTION AND CARE OF CHILDREN, AND PROCEEDINGS
AGAINST THEM
PHYSICALLY OR EMOTIONALLY INJURED CHILDREN

Current through Ch. 460, except for chapters 444, 450, 456 and 457, of the 2004 2nd Annual
Sess.

§ 51A. Injured children;  reports

        Any physician, medical intern, hospital personnel engaged in the examination, care or
treatment of persons, medical examiner, psychologist, emergency medical technician, dentist,
nurse, chiropractor, podiatrist, optometrist, osteopath, public or private school teacher,
educational administrator, guidance or family counselor, day care worker or any person paid to
care for or work with a child in any public or private facility, or home or program funded by the
commonwealth or licensed pursuant to the provisions of chapter twenty-eight A, which provides
day care or residential services to children or which provides the services of child care resource
and referral agencies, voucher management agencies, family day care systems and child care food
programs, probation officer, clerk/magistrate of the district courts, parole officer, social worker,
foster parent, firefighter or policeman, licensor of the office of child care services or any
successor agency, school attendance officer, allied mental health and human services professional
as licensed pursuant to the provisions of > section one hundred and sixty-five of chapter one
hundred and twelve, drug and alcoholism counselor, psychiatrist, and clinical social worker,
priest, rabbi, clergy member, ordained or licensed minister, leader of any church or religious
body, accredited Christian Science practitioner, person performing official duties on behalf of a
church or religious body that are recognized as the duties of a priest, rabbi, clergy, ordained or
licensed minister, leader of any church or religious body, or accredited Christian Science
practitioner, or person employed by a church or religious body to supervise, educate, coach, train
or counsel a child on a regular basis, who, in his professional capacity shall have reasonable
cause to believe that a child under the age of eighteen years is suffering physical or emotional
injury resulting from abuse inflicted upon him which causes harm or substantial risk of harm to
the child's health or welfare including sexual abuse, or from neglect, including malnutrition, or
who is determined to be physically dependent upon an addictive drug at birth, shall immediately
report such condition to the department by oral communication and by making a written report
within forty-eight hours after such oral communication;  provided, however, that whenever such
person so required to report is a member of the staff of a medical or other public or private
institution, school or facility, he shall immediately either notify the department or notify the
person in charge of such institution, school or facility, or that person's designated agent,
whereupon such person in charge or his said agent shall then become responsible to make the
report in the manner required by this section.  Any such hospital personnel preparing such report,

may take or cause to be taken, photographs of the areas of trauma visible on a child who is the subject of such report without the consent of the child's parents or guardians. All such photographs or copies thereof shall be sent to the department together with such report. Any such person so required to make such oral and written reports who fails to do so shall be punished by a fine of not more than one thousand dollars. Any person who knowingly files a report of child abuse that is frivolous shall be punished by a fine of not more than one thousand dollars.

Said reports shall contain the names and addresses of the child and his parents or other person responsible for his care, if known; the child's age; the child's sex; the nature and extent of the child's injuries, abuse, maltreatment, or neglect, including any evidence of prior injuries, abuse, maltreatment, or neglect; the circumstances under which the person required to report first became aware of the child's injuries, abuse, maltreatment or neglect; whatever action, if any, was taken to treat, shelter, or otherwise assist the child; the name of the person or persons making such report; and any other information which the person reporting believes might be helpful in establishing the cause of the injuries; the identity of the person or persons responsible therefor; and such other information as shall be required by the department.

Any person required to report under this section who has reasonable cause to believe that a child has died as a result of any of the conditions listed in said paragraph shall report said death to the department and to the district attorney for the county in which such death occurred and to the medical examiners as required by > section six of chapter thirty-eight. Any such person who fails to make such a report shall be punished by a fine of not more than one thousand dollars.

In addition to those persons required to report pursuant to this section, any other person may make such a report if any such person has reasonable cause to believe that a child is suffering from or has died as a result of such abuse or neglect. No person so required to report shall be liable in any civil or criminal action by reason of such report. No other person making such report shall be liable in any civil or criminal action by reason of such report if it was made in good faith; provided, however, that such person did not perpetrate or inflict said abuse or cause said neglect. Any person making such report who, in the determination of the department or the district attorney may have perpetrated or inflicted said abuse or cause said neglect, may be liable in a civil or criminal action.

No employer of those persons required to report pursuant to this section shall discharge, or in any manner discriminate or retaliate against, any person who in good faith makes such a report, testifies or is about to testify in any proceeding involving child abuse or neglect. Any such employer who discharges, discriminates or retaliates against such a person shall be liable to such person for treble damages, costs and attorney's fees.

Within sixty days of the receipt of a report by the department from any person required to report, the department shall notify such person, in writing, of its determination of the nature, extent and cause or causes of the injuries to the child, and the social services that the department intends to provide to the child or his family.

Any privilege established by > sections one hundred and thirty-five A and > one hundred and thirty-five B of chapter one hundred and twelve or by > sections 20A and > 20B of chapter two hundred and thirty-three, relating to confidential communications shall not prohibit the filing of a report pursuant to the provisions of this section or the provisions of > section twenty-four.

Notwithstanding > section 20A of chapter 233, a priest, rabbi, clergy member, ordained or licensed minister, leader of a church or religious body or accredited Christian Science practitioner shall report all cases of abuse under this section, but need not report information solely gained in a confession or similarly confidential communication in other religious faiths. Nothing in the general laws shall modify or limit the duty of a priest, rabbi, clergy member, ordained or licensed minister, leader of a church or religious body or accredited Christian Science practitioner to report a reasonable cause that a child is being injured as set forth in this section when the priest, rabbi, clergy member, ordained or licensed minister, leader of a church or religious body or accredited Christian Science practitioner is acting in some other capacity that would otherwise make him a reporter.

CREDIT(S)

Added by St.1973, c. 1076, § 5.  Amended by St.1975, c. 276, § 4;  St.1977, c. 501;  St.1977, c. 942;  St.1978, c. 215, § 1;  St.1979, c. 312, § 1;  St.1980, c. 434;  St.1981, c. 91, § 2;  St.1982, c. 102;  St.1983, c. 222;  St.1984, c. 83, §§ 1, 2;  St.1985, c. 209;  St.1986, c. 230, §§ 1, 2;  St.1989, c. 219;  St.1989, c. 535, § 5;  St.1990, c. 474, § 1;  St.1991, c. 280;  St.1992, c. 115, § 1;  St.1993, c. 50, § 23;  St.1997, c. 197;  St.2002, c. 107, §§ 1 to 4.

> <General Materials (GM) - References, Annotations, or Tables>

M.G.L.A. 119 § 51B

MASSACHUSETTS GENERAL LAWS ANNOTATED
PART I. ADMINISTRATION OF THE GOVERNMENT
TITLE XVII. PUBLIC WELFARE
CHAPTER 119. PROTECTION AND CARE OF CHILDREN, AND PROCEEDINGS
AGAINST THEM
PHYSICALLY OR EMOTIONALLY INJURED CHILDREN

Current through Ch. 460, except for chapters 444, 450, 456 and 457, of the 2004 2nd Annual
Sess.

§ 51B. Physically or emotionally injured children; duties of department; disclosure of
information to department

The department shall:

(1) investigate and evaluate the information reported under > section fifty-one A. Said
investigation and evaluation shall commence within two hours of initial contact and be
completed within twenty-four hours if the department has reasonable cause to believe the child's
health or safety is in immediate danger from further abuse and neglect. Said investigation and
evaluation shall commence within two working days of initial contact and be completed within
ten calendar days for all other such reports. The investigation shall include a home visit at which
the child is viewed, if appropriate, a determination of the nature, extent and cause or causes of
the injuries, the identity of the person or persons responsible therefor, the name, age and
condition of other children in the same household, an evaluation of the parents and the home
environment, and all other pertinent facts or matters. Such determinations and evaluations shall
be in writing;

(2) evaluate the household of the child named in the report and make a written
determination of the risk of physical or emotional injury to any other children in the same
household; provided, further, that if such child named in the report is an out-of-home placement,
the department shall notify his parent that a report has been filed when such report is supported
by the department; provided, further, that the department shall notify the biological parent of
other children in the same placement if the child named in such supported report died or was
seriously injured; provided, further, that such notification shall not be required if in the
commissioner's judgment such notification would be against the best interests of the child;
provided, further, that when appropriate, the department shall consult with the biological parent
of the child who is the subject of the report and the other children in the decisions regarding the
children's removal or further placement;

(3) take a child into immediate temporary custody if the department has reasonable cause
to believe that the removal of the child is necessary to protect him from further abuse or neglect;

provided, however, that the department shall make a written report stating the reasons for such removal; and provided further, that if any child is so taken into custody, the department must file a petition pursuant to > section twenty-four on the next court day;

(4) notify in writing the district attorney for the county in which the child resides and for the county in which the offense occurred by transmitting to such district attorney a copy of the report required under > section fifty-one A and this section if, after an investigation and evaluation undertaken pursuant to clause (1), the department has reasonable cause to believe that any of the following conditions has resulted from abuse or neglect; provided, however, that the department may immediately report cases of serious physical injury to the appropriate office of the district attorney:

(a) a child has died;

(b) a child has been sexually assaulted, as set forth in > sections thirteen B, > thirteen H, > twenty-two, > twenty-two A, > twenty-three, > twenty-four, and > twenty-four B of chapter two hundred and sixty-five or > section thirty-five A of chapter two hundred and seventy-two;

(c) a child has suffered brain damage, loss or substantial impairment of a bodily function or organ, or substantial disfigurement;

(d) a child has been sexually exploited, which shall mean encouraging a child to engage in prostitution as defined in > sections four A and > four B of chapter two hundred and seventy-two or in the obscene or pornographic photographing, filming, or depicting of a child as defined in > section twenty-nine A of chapter two hundred and seventy-two; or

(e) a child has suffered serious physical abuse or injury that includes, but is not limited to: (i) a fracture of any bone, severe burn, impairment of any organ, or any other serious injury; (ii) an injury requiring the child to be placed on life-support systems; (iii) any other disclosure of physical abuse involving physical evidence which may be destroyed; (iv) any current disclosure by the child of sexual assault; or (v) the presence of physical evidence of sexual assault.


The department shall within forty-five days after making such notification further notify the district attorney of the service plan, if any, developed for such child and his family. No provision of chapter sixty-six A, section one hundred and thirty-five of chapter one hundred and twelve, and sections fifty-one E and fifty-one F of this chapter relating to confidential data or confidential communications shall prohibit the department from making such notifications or from providing to the district attorney any information obtained pursuant to clause (1) or furnished pursuant to this clause. No person providing notification or information to a district attorney pursuant to the provisions of this clause shall be liable in any civil or criminal action by reason of such action. Nothing herein shall be construed to prevent the department from notifying a district attorney relative to any incidents reported to the department pursuant to > section fifty-one A or to limit the prosecutorial power of a district attorney.

The department shall forward to the local law enforcement authorities in the town in which the child resides and the town in which the offense occurred a copy of the report provided to the district attorney pursuant to this clause.

(5) offer to the family of any child which it has reasonable cause to believe is suffering from any of the conditions described in the report appropriate social services to prevent further injury to the child, to safeguard his welfare, and to preserve and stabilize family life whenever possible. If the family declines or is unable to accept or to participate in the offered services, the department, or any person may file a petition pursuant to > section twenty-four requesting an appropriate order with reference to the care and protection of the child;

(6) file in the central registry established under > section fifty-one F a written report containing information sufficient to identify each child whose name is reported pursuant to > section fifty-one A or fifty-one B. A notation shall be sent to such central registry whenever further reports on each such child are filed with the department. If the department determines during the initial screening period of an investigation that said report under > section fifty-one A is frivolous, or other absolute determination that abuse or neglect has not taken place, then said report shall be declared as "allegation invalid". If such reports are declared "allegation invalid", the name of the child, or identifying characteristics relating to the child, or the names of his parents or guardian or any other person relevant to the report, shall not be placed in the central registry, nor under any other computerized program utilized in the department;

(7) utilize or purchase and utilize such protective services of private and voluntary agencies as it determines necessary;

(8) promulgate regulations to implement the provisions of > sections fifty-one A to > fifty-one F, inclusive.

(9) notify in writing the office for children by transmitting to said office a copy of the report received under > section fifty-one A and a copy of the report prepared under section fifty-one B if and when such report alleges that abuse or neglect occurred at a facility operated by a person subject to licensure or approval by said office under > section ten of chapter twenty-eight A, and when the department has substantiated said report. Said department and said office may coordinate their activities conducted under this section and paragraph (f) of said > section ten. No provision of chapter sixty-six A, section one hundred and thirty-five of chapter one hundred and twelve, sections fifty-one E and fifty-one F of this chapter, or any other provision of law, shall prohibit the department from transmitting a copy of the reports prepared under the provisions of > sections fifty-one A and fifty-one B to said office, or from conducting coordinated activities and sharing information with said office as herein provided, or from having its employees testify at administrative hearings held by said office in connection with matters about which said department has provided notice to said office under this section. Said department and said office shall make all reasonable efforts to minimize the number of interviews of any child-victim which may be necessary. If as a result of any report made under the provisions of said > section fifty-one A or an investigation made under the provisions of said

section fifty-one B, said department is made aware of information or circumstances indicating a licensing violation in any facility operated by a person subject to licensure or approval by said office, said department shall forthwith notify said office of such information. No provision of chapter sixty-six A, sections fifty-one E and fifty-one F of this chapter, or any other provision of law shall prohibit said office from providing information to said department in connection with matters about which said department has provided notice to said office under this section.

(10) notify in writing the department of mental health, the department of mental retardation, the department of public health, and the department of youth services by transmitting to any of said departments a copy of the report received under > section fifty-one A and a copy of the report prepared under section fifty-one B if and when that report alleges that abuse or neglect occurred at a facility owned, operated or funded, in whole or in part, by any of said departments, and when the department of social services has substantiated said report. Said department of social services and any of said departments may coordinate their respective activities conducted under this section, and shall make all reasonable efforts to minimize the number of interviews of any child-victim which may be necessary. No provision of chapter sixty-six A, section one hundred and thirty-five of chapter one hundred and twelve, sections fifty-one E and fifty-one F of this chapter, or any other provision of law, shall prohibit said department of social services from transmitting a copy of said reports made under the provisions of said > sections fifty-one A and fifty-one B to any of said departments or from conducting coordinated activities and sharing information with any of said departments as herein provided, or from having its employees testify at administrative hearings held by any of said departments in connection with matters about which said department of social services has provided notice to any of said departments under this section.

Notwithstanding any privilege created by statute or common law relating to confidential communications or any statute prohibiting the disclosure of information, any person required to make a report pursuant to > section fifty-one A who has information which he believes might aid the department in determining whether a child has been abused or neglected pursuant to an investigation under this section shall, if requested by the department, disclose such information relevant to the specific investigation to the department. Such statutory or common law privileges shall not preclude the admission of any such information in any civil proceeding concerning abuse or neglect of a child, placement or custody of a child.

No person required to provide such information pursuant to this section or permitted to disclose information pursuant to > section 5A of chapter 119A shall be liable in any civil or criminal action for providing such information.

No employer of a person required to provide information pursuant to this section shall discharge, or in any manner discriminate or retaliate against any such person who in good faith provides such information, testifies or is about to testify in any proceeding involving child abuse or neglect;  provided, however, that such person did not perpetrate or inflict such abuse or neglect. Any such employer who discharges, discriminates or retaliates against such person shall be liable for treble damages, costs and attorney's fees.

In all cases in which the department determines that a report of abuse or neglect is not substantiated, the department shall notify in writing any and all sources or recipients of information in connection with the investigation that the report of abuse or neglect has not been substantiated, unless the target of the investigation requests that such notification not occur.


CREDIT(S)

Added by St.1973, c. 1076, § 5.  Amended by St.1978, c. 131;  St.1983, c. 288,§ 2;  St.1984, c. 87;  St.1985, c. 343;  St.1985, c. 776, § 2;  St.1986, c. 478;  St.1986, c. 599, § 37;  St.1989, c. 396;  St.1989, c. 560;  St.1990, c. 474, § 2;  St.1992, c. 115, § 2;  St.1993, c. 303;  St.1996, c. 151, § 278;  St.1996, c. 215;  St.1996, c. 450, §§ 160, 161;  St.1998, c. 64, § 63.

> <General Materials (GM) - References, Annotations, or Tables>

110 CMR 4.32

CODE OF MASSACHUSETTS REGULATIONS
TITLE 110:  DEPARTMENT OF SOCIAL SERVICES
CHAPTER 4.00:  INTAKE

Current through December 17, 2004 Register #1015


4.32: Decision to Support/Unsupport a Report

(1) After completion of its 51B investigation, the Department shall make a determination as to whether the allegations in the report received are "supported" or "unsupported".

(2) To "support" a report means that the Department has reasonable cause to believe that an incident (reported or discovered during the investigation) of abuse or neglect by a caretaker did occur.  To "support" a report does not mean that the Department has made any finding with regard to the perpetrator(s) of the reported incident of abuse or neglect.  It simply means that there is reasonable cause to believe that some caretaker did inflict abuse or neglect upon the child in question.  "Reasonable Cause to believe" means a collection of facts, knowledge or observations which tend to support or are consistent with the allegations, and when viewed in light of the surrounding circumstances and credibility of persons providing information, would lead one to conclude that a child has been abused or neglected.

        Factors to consider include, but are not limited to, the following:  direct disclosure by the child(ren) or caretaker;  physical evidence of injury or harm;  observable behavioral indicators;  corroboration by collaterals (e.g., professionals, credible family members);  and the social worker and supervisor's clinical base of knowledge.

(3) Each determination by the Department that the allegations of a 51A report are "unsupported" shall be communicated to the parent(s) or parent substitute(s), or, in the case of divorced parents, to both parents if both have some form of court-ordered custody, and if not, then only to the parent with court-ordered custody, within 48 hours after the determination that the allegations are unsupported, in a form letter established for use by the Department.  All collaterals who were contacted by the investigator, shall be notified in writing of the decision to unsupport the report, unless the target of the investigation requests that such notification not occur.  If the 51A report in question was filed by a mandated reporter, the mandated reporter is notified of the decision on a form established by the Department.  If the 51A report in question contained an allegation of institutional abuse or neglect which occurred at a facility owned, operated, or funded, in whole or in part, by any department or office listed in > 110 CMR 4.43, or at a facility operated by a person or entity subject to licensure or approval by any department or office listed in > 110 CMR 4.43, then the director or owner of such facility shall also be sent a copy of said letter.

> <General Materials (GM) - References, Annotations, or Tables>

110 CMR 4.36

CODE OF MASSACHUSETTS REGULATIONS
TITLE 110:  DEPARTMENT OF SOCIAL SERVICES
CHAPTER 4.00:  INTAKE

Current through December 17, 2004 Register #1015


4.36: Registry of Alleged Perpetrators

      The Department shall pursuant to > M.G.L. c. 18B, § 7(b) create and maintain a Registry of Alleged Perpetrators as a component of the Central Registry maintained pursuant to > M.G.L. c. 119, § 51F. The Registry of Alleged Perpetrators shall be indexed by the name of the alleged perpetrator. The Registry of Alleged Perpetrators shall contain the following information on the alleged perpetrator: (1) Name, (2) Date of birth, (3) Social Security Number, (4) Sex, (5) Address, (6) Date of Listing, (7) Allegation, (8) Cross reference to victim, (9) Relationship to victim.

> <General Materials (GM) - References, Annotations, or Tables>

110 CMR 4.37

CODE OF MASSACHUSETTS REGULATIONS
TITLE 110:  DEPARTMENT OF SOCIAL SERVICES
CHAPTER 4.00:  INTAKE

Current through December 17, 2004 Register #1015


4.37: Listing of Alleged Perpetrators

The name of the alleged perpetrator shall be added to the Registry of Alleged Perpetrators if: (1) the allegation of child abuse or neglect has been supported and referred to the District Attorney pursuant to > M.G.L. c. 119, § 51B(4) and (2) there is substantial evidence indicating that the alleged perpetrator was responsible for the abuse or neglect. Pursuant to > M.G.L. c. 30A, § 1(6) substantial evidence is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion."

The name of the alleged perpetrator shall remain on the Registry of Alleged Perpetrators for 75 years or until the decision to list the name of the alleged perpetrator is reversed pursuant to 110 CMR 10.00 et seq., or by a court of competent jurisdiction.

> <General Materials (GM) - References, Annotations, or Tables>

110 CMR 4.51

CODE OF MASSACHUSETTS REGULATIONS
TITLE 110:  DEPARTMENT OF SOCIAL SERVICES
CHAPTER 4.00:  INTAKE

Current through December 17, 2004 Register #1015

4.51: Mandatory Reporting to the District Attorney

(1) If, after an investigation pursuant to > M.G.L. c. 119, § 51B, the Department supports a 51A report, the Area Director shall, no later than five working days after the supported decision is made, mail or deliver a copy of the completed 51A report and a copy of the completed 51B investigation to the District Attorney and the local law enforcement authorities for the county in which the child resides and for the county in which the offense occurred, if:

(a) a child has died;

(b) a child has been sexually assaulted;

(c) a child has suffered brain damage, loss or substantial impairment of a bodily function or organ, or substantial disfigurement;

(d) a child has been sexually exploited;

(e) a child has suffered serious physical abuse or injury that includes, but is not limited to:

1. a fracture of any bone, severe burn, impairment of any organ, or any other serious injury;

2. an injury requiring the child to be placed on life-support systems;

3. any other disclosure of physical abuse involving physical evidence which may be destroyed;

4. any current disclosure by the child of sexual assault; or

5. the presence of physical evidence of sexual assault.

(2) If a report is either screened out, or unsupported, on the basis that the alleged perpetrator did not meet the definition of caretaker, but the allegations fall within one of the categories under > M.G.L. c. 119, § 51B(4), as listed above in 110 CMR 4.51(1), the Area Director shall, no later than five working days after the screen out, or unsupport, decision, mail or deliver a copy of the completed 51A report and the completed 51B report, if applicable, to the District Attorney, and the local law enforcement authorities, for the county where the child resides and for the county in

which the offense occurred.

> <General Materials (GM) - References, Annotations, or Tables>

M.G.L.A. 119 § 51F

MASSACHUSETTS GENERAL LAWS ANNOTATED
PART I. ADMINISTRATION OF THE GOVERNMENT
TITLE XVII. PUBLIC WELFARE
CHAPTER 119. PROTECTION AND CARE OF CHILDREN, AND PROCEEDINGS
AGAINST THEM
PHYSICALLY OR EMOTIONALLY INJURED CHILDREN

Current through Ch. 460, except for chapters 444, 450, 456 and 457, of the 2004 2nd Annual
Sess.

§ 51F. Central registry of information; confidentiality; penalties

The department shall maintain a central registry of information sufficient to identify
children whose names are reported pursuant to > section fifty-one A or > fifty-one B. Data and
information relating to individual cases in the central registry shall be confidential and shall be
made available only with the approval of the commissioner or upon court order.  The
commissioner shall establish rules and regulations governing the availability of such data and
information.  The name and all other identifying characteristics relating to any child which is
contained in the central registry, or to his parents or guardian, shall be removed one year after the
department determines, after investigation, that the allegation of serious physical or emotional
injury resulting from abuse or neglect cannot be substantiated or, if said allegations are
substantiated, when the child reaches the age of eighteen, or one year after the date of termination
of services to the child or his family, whichever date occurs last.  If the department determines
during the initial screening period of an investigation that said report under > section fifty-one A
is frivolous, or other absolute determination that abuse or neglect has not taken place, then said
report shall be declared as "allegation invalid".  If such reports are declared "allegation invalid",
the name of the child, or identifying characteristics relating to the child, or the names of his
parents or guardian or any other person relevant to the report, shall not be placed in the central
registry, nor under any other computerized program utilized in the department.

Nothing in this section shall prevent the department from keeping information on
unsubstantiated reports to assist in future risk and safety assessments of children and families.

Any person employed in the central registry who permits the data and information stored
in the registry to be released without authorization to persons or agencies other than those
specified in the rules and regulations shall be punished by a fine of not more than one thousand
dollars or by imprisonment for not more than two and one half years, or both.

CREDIT(S)

Added by St.1973, c. 1076, § 5.  Amended by St.1975, c. 528, § 2;  St.1983, c. 391, § 2;  St.1992, c. 115, § 3;  St.2000, c. 247, § 5.

> <General Materials (GM) - References, Annotations, or Tables>