UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS
'٢٠ CLERKS OFFICE

*٢٠٠٥ OCT 31  P 2: 53*

PETER TINKHAM

DISTRICT COURT
DISTRICT OF MASS
CIVIL ACTION

V.

NO: 05-10470  MLW

DOREEN KELLY

PLAINTIFFS' MOTION IN OPPOSITION TO DSS DEFENDANTS' MOTION TO DISMISS

Plaintiffs Peter Tinkham, Juliet Alexander and Samantha Tinkham, pro
se, hereby move to oppose  MDSS Defendants' Motion to Dismiss
brought under Rule 12(b). As grounds therefore, Plaintiffs state:

1.  Defendants have recast Plaintiffs' Complaint in a new and alien
form, sanding here and embellishing there, to justify their Rule 12
objections to it.  In fact, a cursory reading of their attached
memorandum reveals that Defendants' grasp of the nature of their
own conduct has undergone a diligent pruning job.

2.  Plaintiffs' Complaint alleges that DSS Defendants ratified and
promoted a RICO conspiracy, the predicate and overt acts of which
injured Plaintiffs to the tune of $75,000.00 plus, humiliated and
defamed them, caused intentional emotional distress and violated
Constitutional rights so basic that an intelligent child of 12 would
have recognized them.

3.  As part of their litigation strategy, Defendants have exploited
their fractional knowledge of Fed.R.Civ.P. 12 to the full, bringing
an invalid motion under Rule 12(b) and affirmatively ignoring Rule
12(a).  Defendants' Rule 12(b) motion may extend the time to respon-
sively plead, but it does not extend the time to file a Rule 12(b)
motion.  It certainly does not confer upon Defendants, who have been
objectively in default for over 90 days, standing to file motions

to dismiss whenever they get around to it.

4.   This constitutes, Plaintiffs would respectfully contend, an insupportable and contumacious disregard of the Federal Rules of Civil Procedure. In consequence, Plaintiffs have been obliged to abandon their expectation of a speedy, just and inexpensive resolution of their claims.

5.   Notwithstanding their shaky legal position, Defendants have labored to bring forth 5 objections to Plaintiffs' Complaint, the ground of their acceptance by the Court being necessarily the authority upon which they are proposed, viz.:

1st Objection;   Plaintiffs lack standing to bring suit because they have suffered no significant injury thus denying the Court subject matter jurisdiction under Article III of the U.S. Constitution.

1st Objection Countered:   Whereas Defendants' "no injury-in-fact' defense, like a stick with only one end, has absolutely no foundation in reality or in Plaintiffs' Complaint and whereas the Court must exercise its subject matter jurisdiction in all but the most frivolous cases, the Court has jurisdiction to hear and decide this case and Defendants' demonstrably false objection cannot be admitted.

2nd Objection:   Plaintiffs lack standing on the same ground to request declaratory relief from MGL C.19 51/A and from the policies and procedures of the Massachusetts Department of Social Services.

2nd Objection Countered:   Whereas one need not be committed a priori to the idea that a state has no business interfering in family life to recognize that MDSS as presently constituted is a menace to society and whereas the Court has a duty to order sweeping changes to a state's statutory scheme to protect the public's fundamental rights, the Court has mandatory subject matter jurisdiction to hear and decide this aspect of the case and Defendants' demonstrably false objection cannot be admitted.

2

3rd Objection:   The "domestic relations exception" to federal
jurisdiction bars Plaintiffs' Complaint.

3rd Objection Countered:   Whereas the only "domestic relations"
aspect to this case involves DSS Defendants' brazen and unjustified
entry into Plaintiffs home without warrant and without Plaintiffs'
consent and the base, arrogant disruption of the domestic tranquil-
ity of that home with their obnoxious interrogation of Plaintiffs
therein and whereas in matters involving the claim of constitutional
violations, the principle of "comity" has no place, there is no
jurisdictional bar to the Court's ability to hear and decide this
case and Defendants' demonstrably false objection cannot be admit-
ed.

4th Objection:   Plaintiffs have refused to take any steps to ex-
haust their administrative remedies and the Court must abstain
from hearing this case.

4th Objection Countered:   Whereas DSS Defendants' repeated and
flagrant invasions of Plaintiffs' Constitutional rights stabil-
izes   the intellectual conviction that in the DSS lexicon a
'Fair Hearing" is the closest thing to an oxymoron since Due
Process and whereas DSS Defendants' current scramble to erect
the edifice of a pending state proceeding to thwart the Court's
jurisdiction ex post facto is neither credible nor edifying, no
one discerning a faction is obliged to appear before it for
judgement and Defendants' demonstrably specious objection cannot
be admitted.

5th Objection:   Plaintiffs have failed to plead mail and wire
fraud against DSS Defendants with particularity, violated Rule
9(b), and failed to state a claim upon which relief may be granted.

5th Objection Countered:   Whereas a RICO conspiracy requires
neither predicate nor overt acts to either allege or prove it
and whereas Courts can no longer dismiss a case out of hand for
failing to allege with particularity, the RICO statute itself
relieving Plaintiffs of all that can be termed 'judicially' imposed

3

prudential standing requirements and whereas a Complaint
will survive dismissal unless it appears beyond a doubt that
Plaintiffs can prove no set of facts to support their claims,
Plaintiffs have certainly alleged sufficient facts, even though
not required for RICO conspiracy, to state a claim for relief
under 18 U.S.C §1962(d), and Defendants' demonstrably false
objection cannot be admitted.

6.  It is clear that Defendants' Motion to Dismiss and its
accompanying memorandum are unfounded as to facts, opposed to
the strict requirements of truth, incompatible with a care-
ful analysis of the truly relevent case law, and excluded by a
plain reading of the Federal Rules of Civil Procedure which
have the full force and effect of federal statutes and upon
which both Plaintiffs and Defendants may confidently rely.

7.  DSS Defendants, having failed to show good cause for their
default, have filed a Motion to Dismiss that is insufficient as
a matter of law, their Rule 12(b) defenses therein being neither
timely nor meritorious. Therefore, Plaintiffs request that
their Motion be denied and, because Defendants have not met
their duty of diligence or candor, it should be denied with
prejudice.

8.  The grounds favoring denial are more fully set forth below:

Part One:  Concerning Defendants' contention that Plaintiffs
have suffered no injury in fact.


9.  Defendants object to the formal sufficiency of the Rule
8 (2)(1) allegations in the Complaint and are, therefore, making
a facial, not factual, challenge under Rule 12(b)(1) to
Plaintiffs' Complaint. This facial attack, which does not
suggest that the Court lacks jurisdiction over the subject
matter of the Complaint itself, merely requires that the Court
look at the Complaint to see if Plaintiffs have sufficiently

4

alleged a basis for standing.  Insofar as the Motion asserts facts
as alleged do not provide for federal jurisdiction, Plaintiffs'
allegations are presumed to be true for purposes of this Motion.[1]

10.  Notwithstanding Defendants' vexatious practice to misstate
and to mischaracterize Plaintiffs' allegations of injury, and
as to the standing requirement itself of an injury in fact,
fairly traceable to DSS Defendants' conduct and susceptible of
redress, the Court need not consider the weight or significance
of the alleged injuries but only whether they exist.[2]

11.  DSS Defendants' uniquely constructed challenge to jurisdic-
tion, however, demands the indentification and assessment of
Plaintiffs' injuries, which are clearly factual questions that
require resolution on the merits and, therefore, not suited
at all to resolution by a Motion to Dismiss.[3]

12. Despite this error, or perhaps on account of it, Defendants
press their claim that Plaintiffs have suffered no "cognizable"
injury because  "They were not (1) reported to the District
Attorney's office; (2) accused of a crime (just medical neglect
or educational neglect depending upon which paragraph is being
read in their memorandum); (3) branded as perpetrators; (4) or
prosecuted."

13.  The injury in fact, however, required by Article III of
the Constitution for purposes of a party's standing to sue,
has, in this case, absolutely nothing to do with whether Plain-
tiffs were "prosecuted" by a District Attorney or even whether
they were accused of committing a "crime".

Prescinding from the fact that evidence will be produced at
trial to show that the Commonwealth does indeed prosecute cases
of "medical neglect" on the say-so of the Department of Social
Services, the injuries in fact, which Plaintiffs clearly allege
in their Complaint exist because the U. S. Constitution along
with 28 U.S.C.§1331 & §1343  and 18 U.S.C.§1961 et seq., created
legal rights, the invasion of which creates standing.[4]

14.   DSS Defendants' defense of De Minimis Non Curat Lex is
confuted by their  repeated and flagrant invasions of Plaintiffs'
Constitutional rights under color of law.  These violations,
which are, therefore, per se injuries in fact, confer standing
to sue under the Constitution, 28 U.S.C.§§1331,1343, and
18 U.S.C.§1961 respectively and are comprehensively alleged in
the body and the appendices of the Complaint.[5]

15.   These per se injuries in fact, fairly traceable to Defendants'
conduct and certainly susceptible of redress, are also, in part,
the overt acts committed in furtherance of the alleged RICO
conspiracy, ratified and promoted by all DSS Defendants while
they were acting under color of law.  Plaintiffs have, therefore,
been injured by reason of the conspiracy itself and thus have
standing to sue DSS Defendants under RICO.[6]

15a. Clearly the RICO statute affords Plaintiffs the express
right to sue, extends Plaintiffs' standing to the limit permitted
by the Constitution and relieves Plaintiffs of all judicially
created prudential standing requirements. Therefore, DSS Defendants'
predicate acts, viz., Conspiracy, Obstruction of Justice, Extortion,
Mail and Wire Fraud are also per se injuries in fact, confer
standing to sue, and are comprehensively alleged in the body
and appendices of the Complaint.

16.   Although it is true when standing becomes an issue, general
factual allegations of injury to show standing [7] and threatened
rather than actual injury may satisfy Article III requirements,[8]
Plaintiffs comprehensively allege, in addition to the, as it were,
technical injuries created by statute, the distinct and concrete
harm that flowed from DSS Defendants' violations of the Bill of
Rights, 42 U.S.C.§§ 1983,5&6, and 18 U.S.C.§1962(d), when they
ratified, adopted and promoted School Defendants' conspiracy to
violate 18 U.S.C.§§§1962(a),(b)&(c)., viz,:

     A) Loss of property with a value of over $75,000.00,
compensable under RICO.

     B) Humiliation, embarrassment, extreme emotional distress
along with impairment of reputation and out of pocket expenses

compensable under 42 U.S.C.§§§1983,5&6.

17.   If the Court accepts the Doctrine of Bell V. Hood which
proscribes dismissal for lack of subject matter jurisdiction
unless Plaintiffs' claims are wholly insubstantial and frivolous
and asserted only for the purpose of obtaining jurisdiction,[9]
and if the Court must accept as true, for purposes of ruling
on a Motion to Dismiss for lack of standing, all material
allegations in Plaintiffs' Complaint and must construe the
Complaint in favor of Plaintiffs,[10]  then it will meet with no
obstacle to the denial of this part of Defendants' Motion.


Part Two:  Concerning Defendants' contention that Plaintiffs
have no standing to seek declaratory relief.


18.   Since the injury alleged for purposes of declarative relief
was occasioned by DSS Defendants acting under the color of
Massachusetts General Laws Chapter 19, §§51(a)&(b) and governed
by the policies and procedures engineered by DSS personnel to
carry out the unconstitutional mandate of this law; and, since the
injuries    in fact alleged for purposes of declaratory relief
are the same as addressed in Part One of this memorandum, Plain-
tiffs have standing to sue for declaratory relief based on the
justifications put forth there.

19.   As to Defendants' contention that these injuries are not
susceptible of relief or redress, Plaintiffs respectfully point
out that alleging a probable benefit from winning suit is suffi-
cient.  As far as the grant of declaratory relief, concerning the
unconstitutionality of both the law and the policies and procedures
of MDSS, can be anticipated, Plaintiffs presume that if relief
were granted by the Court, it would effectively abate the
challenged conduct of DSS Defendants and prevent its recurrence.
That would do nicely.

Part Three: Concerning Defendants' contention that the
Domestic Relations Exception bars federal jurisdiction
over Plaintiffs' case.

20.   The    claims against DSS Defendants have nothing whatever
to do with "domestic relations" as enumerated in Defendants'
memorandum.   If fact, it would be difficult to conceive of a
case less concerned with the subject of domestic relations or
more concerned with the subject of the obvious and flagrant
abridgement of Constitutionally guaranteed freedoms by state
workers acting under color of state law.

The Court should sift through the claims made in Plaintiffs'
Complaint to determine the true character of the dispute to
be adjudicated, [11]   because the less a case is a "core"
domestic relations case, the less discretion it has to refuse
to exercise its jurisdiction. [12]

21.   If the Court does that in this case, it will be perfectly
obvious that the domestic relations exception does not apply
to Plaintiffs' Complaint which, as illustrated in this Motion,
does not even possess an overtone or hint of same. [12(a)]

22.   It will also be clear to the Court that this domestic
relations exception is a specious attempt by DSS Defendants' to
evade the consequences of their conduct.   This authorizes
certain questions to be put, for instance:   What would be the
result if Defendants' conduct were affirmed?

23.   DSS policy is a prime illustration of those bureaucratic
experiments that hop from the drawing board onto the backs of
unsuspecting citizens without any intervening period of public
trial except as its victims endure it.

24.   A closer examination of DSS policy and procedure reveals
a belief system that is, in several respects incompatible with
the U.S. Constitution.   This incompatibility exists on two

levels.  The first is incompatibility of content.  The second
is incompatibility of method.

One indication of the former is the DSS infatuation with "pop"
psychology.  One need only peruse their so-called 'profiles'
of perpetrators index whereby a person's habits, thoughts, ex-
pressions and the state of his housekeeping (does he keep his
shoes on the attic stairs?) are divided into three catagories
as if scientific principles were actually involved.  These
'charts' are only a partial indicator of the depth of stupidity
that is expressed in DSS policy and procedure, independent of
any objective norms.

25.  One indication of the latter is the fact that DSS workers,
like medicos in combat, are allowed by law to walk around and
into peoples' houses and interrogate them unmolested on the
assumption that they are just out there to take care of the
wounded..  Plaintiffs have felt the repurcussions of the un-
fettered 'social worker' who has, besides her incompetent take
on humanity generally, several other bees buzzing about in
her visionary bonnet.  A  week of DSS 'garden variety'
interference with peoples' fundamental rights is enough to
make a person renounce his pacificism.

26.  Plaintiffs would suggest that the answer to the question
posed in paragraph 22 of their motion is nothing less than the
perversion of our constitutional system in its entirety.
The bread that has been cast upon the waters of the several
states in the form of "social" services has come back moldy.
Ample reason for the Court to deny this part of Defendants'
Motion.

Part Four:  Concerning Defendants' contention that Plaintiffs
have not exhausted their administrative remedies.

27.  DSS Defendants are on equally shaky ground with this
objection.  Their recent so-called "Fair Hearing" offer,
scheduled 1565 days after Plaintiffs requested it, is a de-
liberate fraud upon the Court, Justified by untrue statements
made by opposing Counsel under oath.

28.  Notwithstanding this regrettable development (doubtless counsel relied upon the willful falsehoods of his clients), Plaintiffs are manifestly NOT required to exhaust any state or administrative remedy in this matter.  Although  Plaintiffs' Complaint alleges and describes in detail how they took every one of the two steps available to them -and as soon as they were available- to invoke the remedies offered by DSS (Please see attached affidavits of Plaintiff Alexander and Plaintiff Tinkham), it is not necessary to allege the inadequacy of any state or administrative remedy because exhaustion of same is not a condition precedent to maintaining a §1983 action. [13] It is not required for claims brought under §1985, either. [14] There is no doctrine of exhaustion of state or administrative remedies applicable to civil rights actions in Federal Courts where jurisdiction is founded, as in this case, upon 28 U.S.C.§1343, including actions under 42 U.S.C.§1983 and §1985. [15]

29.  The well settled case law on this point is unambiguous. Exhaustion of state judicial or administrative remedies is NOT required because of the paramount role Congress has assigned to the Federal Courts to protect constitutional rights. [16]

30.  As to Plaintiffs' claims of denial of Due Process, a District Court may only grant a Motion to Dismiss for lack of subject matter jurisdiction based on Plaintiffs' failure to exhaust administrative remedies ONLY if it is UNDISPUTED that there has been no attempt at exhaustion. [17]  Neither are Plaintiffs required to pursue remedies when such remedies are so inadequate as to bring them within the futility doctrine. [18]

31.  Courts need not bow to the primary jurisdiction of an agency, even if it were mandated which it is not, where resort would be unavailing in light of that agency's manifest opposition and because it has already evinced its special

and, in this case, venal incompetence in a manner hostile
to Plaintiffs.

32. In those cases where exhaustion is required, the premise
underlying the Doctrine of Exhaustion of Administrative
Remedy is that the remedy is available to Plaintiffs on their
own initiative, that it is available rapidly, and that it will
protect Plaintiffs' claims of right.

33. Plaintiffs have clearly alleged sufficient facts with
sufficient particularity to expose the inadequacy and, a
fortiori, the futility of resorting to the DSS remedy of a
"Fair Hearing" or an administrative one.

34. There is no set of facts in this case by which DSS
Defendants would possibly show that an efficacious and ade-
quate remedy exists which Plaintiffs are obliged to exhaust.
In light of the corollary fact that there is no pending
state proceeding worth the paper it is printed on, the Court
should deny this part of Defendants' Motion.

Part Five: Concerning Defendants' contention that Plaintiffs
have failed to state a claim under RICO.

35. The issue of subject matter jurisdiction under the
federal question statute is separate and distinct from the
issue of whether Plaintiffs have stated a claim but the
fact that the Court must construe all material allegations
in the Complaint in favor of Plaintiffs applies to both.

Plaintiffs have alleged that DSS Defendants ratified and
promoted a RICO conspiracy orchestrated by School Defendants
to violate 18 U.S.C.§§§ 1962(a),(b),&(c), and by doing so
have sufficiently alleged a claim against DSS Defendants
for which relief may be granted.

11

36. Although Plaintiffs' Complaint comprehensively sets
out in the body and in the appendices, the "time, place,
and content" of the DSS Defendants' alleged Mail and Wire
Fraud, they have done more. Every predicate act that
DSS Defendants allegedly committed, viz., Conspiracy,
Obstruction of Justice, Extortion, Impeding a Criminal Inves-
tigation and Wire and Mail Fraud, and every overt act, viz.,
Violations of Plaintiffs' Constitutional Rights, has been
correctly and comprehensively enumerated and set forth in
the Complaint.

37. Rule 9(b) cannot set the boundaries of a Court's
jurisdiction and in this case it is not called upon to do
so. Neither predicate nor overt act, no matter how inartfully
pleaded, is required - either to allege or prove partici-
pation in a RICO conspiracy. One can be a conspirator by
agreeing to cnly facilitate some of the acts leading to the
substantive offense, viz., violation of 18 U.S.C.§§§1962(a),
(b) or(c). It is settled law that a conspiracy may exist
and be punished whether or not the substantive offense ensues,
for this particular RICO conspiracy, like every other one, is
a distinct evil, dangerous to the public and so punishable
in itself.[19]

This Motion to Dismiss brought by DSS Defendants whose
alleged conduct would pass muster under a feudal regime,
is insufficient as a matter of law, fails to make a bona
fide objection under Rule 12(b)(1) or Rule 12(b)(6) and
should be denied. Plaintiffs' case has unique Constitutional
dimensions and it is in the public interest that a state
sponsored humbug nomenklatura be reigned in by a jury of its
peers. Therefore Plaintiffs' Complaint should be allowed
to advance to trial.

REQUEST FOR ORAL ARGUMENT

If oral argument will assist the Court, Plaintiffs are
prepared to give it.

Respectfully submitted,

Peter Tinkham, Pro se

Juliet Alexander, Pro se

October 30, 2005

P.O.Box 1075
Easton, MA 02334
(207) 364-3964

I hereby certify that a true copy of the above document
was served upon the attorneys of record for the other
parties by mail on October 31, 2005.

13

CASES REFERENCED IN MOTION

| FOOTNOTE | | CASE |
|---|---|---|
| 1 | ¶9 | Barnett v. Okeechobee Hospital<br>C.A.11th 2002, 283 F.3d. 1232, 1237-8 |
| 2 | ¶10 | Coalition for the Environment v. Volpe<br>504 F.2d. 156 (8th Cir. 1974) |
| 3 | ¶11 | Morrison v. Amway Corp.<br>323 F.3d 920, 924-7. (11th Cir. 2003) |
| 4 | ¶13 | Lujan v. Defenders of Wildlife<br>504 U.S. 555, 112 S. Ct. 2130<br>119 L.Ed  2d  351 (1992) |
| 5 | ¶14 | Hartigan v. Federal Home Loan<br>746 F.2d 1300  (7th Cir. 1984) |
| 6 | ¶15 | Schiffels v. Kemper Financial Ser. Inc.<br>978 F.2d  344  (7th Cir. 1992) |
| 7 | ¶16 | Falwell v. City of Lynchburg, Va.<br>D.C.Va.  2002,  198 F.Supp.2d 265 |
| 8 | ¶16 | Friends of the Earth v. Laidlaw<br>528 U.S. 167, 180-181<br>120 S.Ct  693 (2000)<br>145 L.Ed  2d 610 |
| 9 | ¶17 | Bell v. H ood<br>327 U.S.  678, 682-685, 66 S.Ct.773<br>90 L.Ed  939 (1946) |
| | | Steel Co. v. Citizens for a Better<br>Environment  523 U.S. 83,<br>118 S. Ct. 1003,  140 L.Ed 210 (1998) |
| 10 | ¶17 | Moseke v. Miller and Smith, Inc.<br>D.C.Va  2002, 202 F. Supp. 2d  492 |
| 11 | ¶20 | Cole v. Cole<br>633  F.2d  1083 (4th Cir. 1980) |
| 12 | ¶20 | Kirby v. Mellewger<br>830  F.2d 176 (11th Cir. 1987) |
| 12a | ¶21 | Drewes v. Ilnicki<br>863 F.2d  469 (6th Cir. 1988) |
| 13 | ¶28 | Haag v. Cuyahoga County<br>619  F. Supp. 262, N.D. Ohio  1985<br>Affirmed  798 F.2d  1414 (6th Cir. 1986) |
| 14 | ¶28 | Allee v. Medrano<br>416 U.S. 802, 94 S.Ct.  2191<br>40 L.Ed.  2d  566 (1974) |

CASES REFERENCED IN MOTION    PAGE 2

| FOOTNOTE | | CASE |
|---|---|---|
| 16 | ¶29 | Patsy v. Board of Regents<br>457 U.S. 496, 102 S.Ct. 2557<br>73 L.Ed.  2d  172 (1982) |
| | | McGarry V. Curvin<br>406  F. Supp.  57 (D.RI 1976) |
| 17 | ¶30 | Moyer V. Showboat Casinos<br>56 F. Supp. 2d 498 (D. NJ 1999) |
| 18 | ¶30 | Shalala v. Illinois Council<br>529 U.S., 120 S.Ct.  1084<br>146 L.Ed 2d 1 (2000) |
| 19 | ¶37 | Salinas v. United States<br>118 S. Ct.  469  (1997) |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


PETER TINKHAM

    V.                      CIVIL ACTION NO: 05-10470MLW

DOREEN KELLY


### AFFIDAVIT OF JULIET ALEXANDER


I, Juliet Alexander, state under oath as follows:

1.  I am a plaintiff in the above-entitled action.

2.  In March 2002, I was accused of child abuse and neglect and listed as a perpetrator in DSS correspondence and in their files.  The shame, embarassment, and outrage at being falsely accused was unendurable except that we endured it.

3.  My husband, who was also accused and cloaked with the same epithet of 'alleged perpetrator', and I resolved to cleanse ourselves of the filth that had blackened our reputations and  made us the subject of raised eyebrows among family members and co-workers, to say nothing of the school personnel who were responsible for concocting the charges in the first place.

4.  We requested the DSS file and when we discovered the depths of calumny and slander, outright lies and defamation that were contained in the original accusations, we were outraged and terrified at the same time.  Any person malicious enough to invent such filth and anyone who would believe such filth could not be trusted.  We did not know what they would do next.  This was particularly unnerving when the collaboration between DSS Defendants and School Defendants  became obvious upon reading the DSS file.

5.  We requested  a Fair Hearing immediately, convinced that at least we would have a forum to demonstrate our innocence.  The emotional distress we felt increased

exponentially when we learned that we would not be getting
a hearing.  When we discovered the existence of a concilia-
tory meeting with the area DSS director, we immediately
asked our attorney to request the meeting, feeling that
a request from an attorney would not be so lightly dis-
regarded.  When we learned to our extreme dismay that
Defendant Pontes did not even have the courtesy to acknow-
ledge this request, we felt outraged and helpless at the
same time.

6.  We began to fear what these government employees were
up to.  We were aware of  the reputation that DSS had as
a 'child-snatching' agency and were truly alarmed to
receive from a third party a communication written by
Defendant Kelly and copied to Defendant Thomas that was
addressed to "Guardian of Samantha Tinkham" and concerned
itself with informing that "guardian" about Samantha's
educational status. We were never sent that letter by Kelly.

7.  I became so fearful and anxious that I sought psychiatric
assistance.  I also felt that I might lose control if I
ever came into the presence of any of the Defendants, partic-
ularly the ones who lived in my town. When the medical
advice proved unhelpful and the sense of extreme emotional
distress did not abate but  rather increased with each
passing day, I began to pack up my household.

8.  When I received Defendant Cohen's letter in September '02
with its gratuitous reference to a  'conciliation meeting
that had not yet been scheduled' and then offered to hear
for herself how we felt about the treatment DSS had given
us,  I finished packing and moved my family and my fear
and my constitutional rights out of the Commonwealth of
Massachusetts.

Signed under the penalties of perjury  this 30th day of
October, 2005

Juliet Alexander

UNITED STATES DISTRICT COURT
MASSACHUSETTS DIVISION

PETER TINKHAM

 V.    Civil Action No: 05-10470MLW

KELLY

### AFFIDAVIT OF PETER TINKHAM

I, Peter Tinkham, state under oath as follows:

1.  I am a plaintiff in the above captioned action.

2.  I first learned that the charges against me were being "supported" by DSS in a phonecall from Defendant Senges on March 8, 2002.

3.  I immediately sent a letter, dated March 9, 2002, to Defendant Pontes requesting the complete DSS record.be sent to me forthwith.  I intended to prepare our defense against these preposterous charges immediately.

4.  I then sent a letter dated March 14, 2002, requesting a Fair Hearing from the Fair Hearing Division at DSS.

5.  On or about March 20, 2002, I received a letter from Defendant Keezell postponing a date for a Fair Hearing indefinitely.

6.  As soon as I discovered that a "conciliation" meeting with the DSS area Director was provided for in the DSS policy and procedure, I directed my attorney to request such a hearing from Defendant Pontes forthwith.

7. The same day he received my request, my attorney mailed a letter to Defendant Pontes requesting a "conciliatory" meeting with him. This letter was sent July 12, 2002

8.  Defendant Pontes, to this day, has never acknowledged this letter from my attorney and he has never communicated with me in any manner whatsoever.

9.   In September 2002, I received a letter from DSS social worker, Defendant Cohen, who was assigned to our "case". In this letter, Defendant Cohen referred to a conciliation meeting with Defendant Pontes "that has  not yet been scheduled".  Defendant Cohen then offered to hear any complaints we might have about the way we were treated by DSS at a meeting at our home which she was interested in scheduling.

10.   The next communication I received from DSS was a letter from Defendant Cohen telling me in March 2003 that our "case" had been closed without our ever learning why it had been opened.

11.   The     next communication with DSS in this matter was a letter from Defendant Keezell dated September 29, 2004, but received by us after a rerouting to Florida and then to Maine on December 14, 2004.  Defendant Keezell suggested in his letter that if we were still interested in a Fair Hearing one might be scheduled if we replied by October 8, 2004, otherwise it would be dismissed, 940 days after I requested it.

12.   The very next communication from anyone on the subject of a Fair Hearing was a letter from Stephen Dick, AAG, informing me that a Fair Hearing might be scheduled sometime for us.  This letter was dated July 12, 2005, but postmarked August 4, 2005 and received by me on August 11, 2005.

13.   I replied to this letter with a letter to Mr. Dick informing him that if he would identify who he was represen- ting in the civil case, if anyone, I would be pleased to correspond with him .  I sent this letter on August 18, 2005.

14.   I never received an answer from Mr. Dick to my letter.

15.   The next communication from Attorney Dick, aside from a letter requesting a telephone call, and his notice to the Court concerning the transfer of this case to a

magistrate judge, was his letter of October 6, 2005
enclosing his Motion to Dismiss (This was my second clue
that Mr. Dick was representing anyone or anything in
this case.) in which he reiterated his offer of a Fair
Hearing.  I declined to respond concerning the Fair
Hearing offer because I intended to address it in my
Motion to the Court.  I did not think that Attorney Dick's
noticeable lack of courtesy warranted my taking the time
from composing my Motion to write him a letter.

16.  My last communication from Mr. Dick was a letter
dated October 17, 2005 and actually mailed on October 17th,
telling me that a Fair Hearing was going to be scheduled for
for us whether we consented to it or not.

17.  On October 18, 2005, my wife answered Mr. Dick's
letter at my request, phoning him to alert him that it
was on the way in order to avoid any suggestion that
we were unresponsive.

18.  Lastly, on October 19, 2005, I received a notice
from DSS  scheduling  a  "Fair Hearing" for December 22,
2005, 1564 days after I requested it.


Signed under the penalty of perjury this 30th day of
October, 2005.


Peter Tinkham

ATTACHMENTS TO AFFIDAVIT OF PETER TINKHAM

¶3   Letter   dated March 9, 2002 / Plaintiff to Defendant Pontes

¶4   Letter   dated March 14, 2002/Plaintiff to Defendant Keezell

¶5   Letter dated March 19, 2002 / Defendant Keezell to Plaintiff

¶7   Letter dated July 12, 2002 / Atty Moniz to Defendant Pontes

¶8   Letter dated Sept. 9, 2002 / Defendant Cohen to Plaintiff

¶11  Letter dated Sept. 29, 2004/Defendant Keezell to Plaintiff

¶12  Letter dated July 12, 2005, Postmarked August 4, 2005,
                             / Atty Dick to Plaintiff

¶13. Letter dated August 18, 2005 / Plaintiff to Atty Dick

¶16. Letter dated October 18, 2005/Plaintiff to Atty Dick.

March 9, 2002

Ken Pontes, Area Director
30 Mystic Street
Arlington, MA  02474


Dear Mr Pontes,

Please send me a copy of the 51A and 51B charges filed against
us by the Sharon School Department and all investigative notes
by Ms. Singes and supporting documentation.  We desire that all
the requested material be forwarded to us as soon as possible.

I enclose the only written documentation we have received in this
case.  I would appreciate very much your kind attention to this
matter and I remain


                                        Cordially yours,


                                        Peter Tinkham
                                        132 Massapoag Avenue
                                        Sharon, MA  02067


cc  Alan Levine, Esq.

Fair Hearing Office
Massachusetts Department of Social Services
24 Farnsworth Street
Boston, MA  02210


March 14, 2002


Dear Sir,

On March 8, 2002, Ms. Singes informed me via the telephone that a
complaint of 'neglect', viz. failure to provide 'therapy' for
our daughter was being 'supported' by her agency.  We wish to
request a Fair Hearing on this matter and this letter will serve
as that request.  The information required by the brochure she
gave us in order to request such a hearing is as follows:

Name, Address, and Telephone:

Juliet Alexander and Peter Tinkham, parents.
132 Massapoag Avenue, Sharon, MA 02067
781-784-5521

Date Decision was Made:

March 8, 2002

Name of Child:

Samantha Louise Tinkham

Name And Address Of Office Where Decision Was Made:

Arlington Area Office
30 Mystic Street, Arlington, MA  02474
781-641-8500

Decision Desired To Be Appealed:

See Above.

A Copy Of The Notice Sent By Department:

Enclosed please find the ONLY written material sent by Ms. Singes.

I remain

Cordially,

Peter Tinkham

cc Alan Levine, Esq.

**Executive Office of Health and Human Services**
**Department of Social Services**
**Fair Hearing Unit**
**24 Farnsworth Street, Boston, Massachusetts 02210**
**Phone: (617) 748-2000  Fax: (617) 261-7428**



JANE SWIFT, Governor
ROBERT P. GITTENS, Secretary
LEWIS H. SPENCE, Commissioner

03/19/2002

RE: Hearing # 20020407

Peter Tickham/Alexander, Juliet
132 Massapoag Ave.
Sharon, MA 02067

Dear M. Tickham/Alexander, Juliet

This letter is to acknowledge receipt of your timely request for a fair
hearing.

As you may be aware, the fiscal crisis in Massachusetts has resulted in
an early retirement offer to eligible state workers and a freeze in our ability
fill vacancies. We are now in the process of reconfiguring our hearing
schedule due to loss of staff. As a result, we are unable to give you a date,
time, and location of your hearing at this time. We expect to be able to do so
within the near future.

I regret not being able to be more definitive at this time and appreciate
your patience and cooperation.

Please feel free to contact me if you have any questions.

Sincerely,

Barney Keezell
Director, Fair Hearing Unit

# Law Offices Of Lawrence Moniz

41 Harrison Street ◆ Taunton, MA 02780
Phone (508) 823-3612 ◆ Fax (508) 824-2820

July 12, 2002

Mr. Kenneth F. Pontes, Area Director
Mass. Department of Social Services
Arlington Area Office
30 Mystic Street
Arlington, MA 02474

### <u>Re: Samantha Tinkham</u>

Dear Mr. Pontes:

Please know that I represent Peter Tinkham and Juliet Alexander, the parents of the child, Samantha Tinkham, for whom a 51A decision was supported pursuant to M.G.L. c. 119, §51B on or about March 8, 2002. The social worker Stephanie Thomas was assigned to do the assessment subsequent to that supported 51B investigation and she has now forwarded, to my clients and myself, a proposed Service Plan for our consideration.

My clients have requested a fair hearing relative to the decision to support the 51A allegation, but on March 19, 2002, Mr. Barney Keezell, Director of the Fair Hearing Unit, indicated that they were not able to schedule a fair hearing based upon budgetary restrictions.

On that basis, this letter is to request that a meeting be arranged with you, Ms. Thomas if you so desire, and anyone else that you feel is necessary as well as both of my clients and their counsel. The purpose of this meeting would be in what as been described as a "conciliatory meeting" and we would seek to address issues involving the validity of the decision to support the allegations against my clients and the need for further DSS involvement. My clients have obtained indications from appropriate clinicians that this child needs to continue to be home tutored and that is the plan for the fall and the clinician's "order" to the effect that the child should be home tutored are being communicated to the Sharon School Department in the hopes that they will abide by their obligations under special education law and Massachusetts General Laws generally to provide the level of education to which this child is entitled in her home setting.

Would you please contact this office upon receipt of this letter to discuss the feasibility and timing of such a conciliatory meeting.



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
## Department of Social Services

### Arlington Area Office

30 Mystic Street, Arlington, Massachusetts 02474
Phone: (781) 641-8500    ◆    Fax: (781) 646-5172

JANE SWIFT
Governor
◆
ROBERT P. GITTENS
Secretary
◆
LEWIS H. SPENCE
Commissioner
◆
KEN PONTES
Area Director

9/9/02

Dear Mrs. Alexander and Mr. Tinkham,

I am writing you this letter to introduce myself as the ongoing social worker that has been assigned to work with your family. I am aware that you have requested a meeting with the area director, Keneth Pontes, and to date, that has not yet been scheduled. In the interim, I would like to have the opportunity to meet with your family to review the service plan that was mailed to you by the previous assessment worker, and to discuss any concerns you may have regarding the department's involvement at this time. Please contact me at your earliest convenience to schedule a home visit. My phone number is 781-641-8530. I look forward to speaking with you.

Sincerely

Erica Cohen
Ongoing social worker





**The Commonwealth of Massachusetts**
**Executive Office of Health and Human Services**
**Department of Social Services**
24 Farnsworth Street, Boston, Massachusetts 02210
Tel (617) 748-2000 * Fax (617) 261-7428

**MITT ROMNEY**
Governor
♦
**KERRY HEALEY**
Lieutenant Governor
♦
**RONALD PRESTON**
Secretary
♦
**LEWIS H. SPENCE**
Commissioner

September 29, 2004

Mr. Peter Tickham
Ms. Juliet Alexander
132 Massapoag Ave.
Sharon, MA 02067

Re:  Fair Hearing # **20020407**

Dear Mr. Tickham/Ms. Alexander:

As you may remember, we have not been able to schedule the Fair Hearing you requested on 3/14/2002 because of staffing shortages due to budget cuts.  We are currently in the process of possibly scheduling your appeal in the near future.

Please let our office know if you are still interested in the appeal by October 8, 2004 by calling 617-748-2030 and leave a message with your name and **hearing number**.  If we do not hear from you by this date, we will **dismiss** your appeal, assuming you are no longer interested in pursuing this matter.

Thank you for your patience in this matter.

Sincerely,

Barney Keezell, Director
Fair Hearing Unit

August 17, 2005

Stephen Dick, AAG
One Ashburton Place
Boston, Massachusetts
            02108-1598

RE:  Tinkham v. Kelly  Civil Action No:  05-10470MLW

Dear Mr. Dick,

I am in receipt of your July 12, 2005 letter, that is to say, your
letter dated July 12, 2005 but mailed on August 4, 2005 and
received by me on August 11, 2005.   In this letter you kindly
advise that the Court will not hear motions that are not sent
also to defense counsel. I assume this is your round-about way
of indicating  that you are defending someone or something in
the above-captioned matter.  If this assumption is correct, please
inform me  and I will be pleased to send you all of the motions
that have been sent to the Court and to the only other counsel
of whom I had knowledge, John Davis, Esq..

I remain

                                        Cordially yours,

                                        Peter Tinkham, Pro se
                                        P.O. Box 466
                                        Hopkinton, MA 01748-9998

PS. I note that Attorney Davis has not, to my knowledge, sent
you his very interesting Motion To Dismiss.  Would you like me
to send you a copy?



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL

ONE ASHBURTON PLACE
BOSTON, MASSACHUSETTS 02108-1598

THOMAS F. REILLY
ATTORNEY GENERAL

(617) 727-2200
www.ago.state.ma.us

July 12, 2005

Mr. Peter Tinkham
Ms. Juliet Alexander
PO Box 466
Hopkinton MA 01748-9998

> **Re:    Tinkham, pro se, et al v. Kelly, et al.**
> **USDC 05-10470-MLW**

Dear Mr. Tinkham and Ms. Alexander:

The Massachusetts Department of Social Services will hear your appeal. Should you desire to exercise that right, the hearing would probably occur sometime between November, 2005 and January, 2006. In the event you are aggrieved by that decision, judicial review will of course be available to you, also as of right, under G.L. c. 30A, §14. Please contact me if you wish to go forward with your DSS appeal.

On another matter, kindly be advised that the Court will not consider motions with which defense counsel has not been served a copy.

Thank you for your attention.

Sincerely,

Stephen Dick, AAG
x3324
stephen.dick@ago.state.ma.us

cc:    Barney Keezell

October 18, 2005

Re:  Civil Action #05-10470 MLW

Dear Mr. Dick,

I have received your letter of the 6th instant in which you
say that a copy of DSS Defendants' Rule 12 motion and your
Rule 7.1 (a)(2) certificate and affidavit are enclosed.  This
letter is to inform you that the Rule 7 certificate and affi-
davit were NOT enclosed, doubtless through inadvertence.
Would you kindly see to it that I receive a copy of same at
your very earliest convenience?

Additionally, please be advised that it has been Plaintiffs'
policy, particularly since my conversation with you in early
July, to communicate with opposing counsel in writing only,
unless it concerns a procedural matter, for instance, a request
to enlarge time, that could be expedited with a simple phone-
call.

I would also like to take this opportunity to respectfully
remind you that Rule 12(a) requires all Defendants to respon-
sively plead or otherwise defend within 20 days of service of
summons.  You most certainly do not need to be reminded that
the Federal Rules of Civil Procedure, far from being only ad-
visory or optional, have the full force and effect of federal
statutes.

I remain, my dear Sir

                                Very truly, yours,

                                Juliet Alexander

                                Juliet Alexander, Pro se

P.S.    Regarding your phone messages and letters on the subject
of a so-called Fair Hearing, which is the closest thing to an
oxymoron since Due Process, please note that our motion in
opposition to DSS Defendants' Rule 12 Motion to Dismiss deals
with the exhaustion question in detail.  Briefly, it can be
summarized by saying that no one discerning a faction is
obliged to appear before it for judgement.  Or, as the blind
poet  Homer  once said: Even the fool is wise after the event.
DSS Defendants' interference in Plaintiffs' lives was flagrant,
intentional and malicious and their present scramble to erect
the edifice of a pending state proceeding is neither edifying
nor credible.  Or necessary.  The case law on this subject is
unambiguous.

You must keep in mind, my dear sir, that post hoc ergo propter
hoc is not always sound reasoning, but ante hoc ergo non propter
hoc is unanswerable.

Again, I remain,

                                        Very truly yours,