UNITED STATS DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER TINKHAM, et al
Plaintiffs

v.

DOREEN R. KELLY, et al
Defendants

CIVIL ACTION NO.
05-10470-MLW

**MOTION TO ENLARGE MEMORANDUM**

Plaintiffs, Peter Tinkham and Juliet Alexander, acting pro se in the above-captioned matter, move to enlarge their Motion and Memorandum in Opposition to DSS Defendants' Rule 12 Motion to Dismiss for the following reasons:

1. When Plaintiffs submitted their Motion and Memorandum in Opposition on October 31, 2005, they were not in possession of certain facts which, Plaintiffs contend, demonstrate that DSS Defendants have no standing to file a Rule 12 Motion and that further, their Motion to Dismiss is a manifest imposture upon the Court.

2. During the January 19, 2006 hearing before the Court, denominated a status conference but in reality a hearing on motions in the case held in open court and upon the record, the Court was pleased to begin the session dwelling at some length upon the relevance of a document plainly outside the pleading in this case.

3. Rule 12(b) states: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to, and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent by such a motion by Rule 56."

4. If this document considered by the Court at the hearing, viz., DSS Defendants' Notice of Fair Hearing, is not excluded by the Court, Plaintiffs request leave to file their refutation of DSS Defendants' Motion "Facts Alleged" in order that no statement therein be considered by the Court without opposition for purposes of Rule 56.

Therefore, in consideration of the foregoing reasons, Plaintiffs move for leave to file the attached addendum to their Motion and Memorandum in Opposition to DSS Defendants' Rule 12 Motion to Dismiss.

Respectfully submitted,

February 5, 2006

_____
Peter Tinkham, pro se

_____
Juliet Alexander, pro se
P.O. Box 1075
Easton, MA 02334
(207) 364-3964

ADDENDUM TO PLAINTIFFS' MOTION AND MEMORANDUM IN OPPOSITION TO DSS DEFENDANTS' RULE 12 MOTION TO DISMISS.

### PART ONE

1. DSS Defendants are objectively in default for failing to responsively plead or otherwise defend under Rule 12(a), and have no standing to file a Motion to Dismiss before this Court.

   a) DSS Defendants' Rule 12 Motion was filed 65 days after their failure to timely answer Plaintiffs' Complaint.

   b) Defendants have, in the succeeding six months, neither answered late to mitigate their default nor given any cause why default judgment should not be entered against them.

   c) Therefore, DSS Defendants' Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6) is not properly before this Court and Plaintiffs are under no legal obligation to respond. (Please see Plaintiffs' Motion in Limine No. 1, attached.)

2. DSS Defendants' Rule 12 Motion to Dismiss is a deliberate imposture upon the Court.

   a) On page 2 of their Motion, Defendants falsely claim to have served Plaintiffs with a true copy of their Rule 7 Certificate and Affidavit of counsel, Stephen Dick.

   b) This falsehood was pretextural and a necessary preliminary step to DSS Defendants' filing a Notice of Fair Hearing, which is also a

manifest imposture upon the Court. (Please see Plaintiffs' Motions to Strike the Affidavit of Stephen Dick and Notice of Fair Hearing, attached.)

3. DSS Defendants falsely certified that they conducted a diligent pre-filing investigation of the law and the facts supporting their motion.

    c) Every one of the cases cited in Defendants' Motion to Dismiss are either irrelevant to the facts in this case, viz., their first claim that Plaintiffs have not alleged subject matter jurisdiction through a failure to allege Article III injury; and their second claim that the "Domestic Relations Exception" applies to this case; or demonstrate a profound misreading of the unambiguous and clearly settled law viz., their third claim that Plaintiffs are required to exhaust their administrative remedies; and their fourth claim that Plaintiffs have alleged no RICO predicate act.

4. On account of the imposture of DSS Defendants claim of a prior pending state proceeding in this case, viz., the offer of a Fair Hearing made by Defendants six months after the case was filed in Federal Court and three and one-half years after Plaintiffs first invoked it, an imposture that involves the deliberate falsification of a crucial document in order to mislead the Court, Plaintiffs list below the cases that unambiguously stand for the proposition that 1) Plaintiffs do not have to exhaust their state judicial or administrative remedies with respect to their §1983 claims, and 2) Plaintiffs are not obliged

2

to exhaust <u>any</u> state or administrative remedy regarding their claim of violation of the 14th Amendment's "Due Process Clause" because they are manifestly not prisoners seeking a writ of habeas corpus and their case does not involve the taking of property by eminent domain without compensation.

See: *Patsy v. Board of Regents of Fla.*, 102 S.Ct. 2557.
   "Exhaustion of state administrative remedies shall not be required as a prerequisite to bringing an action pursuant to §1983."

See: *McNeese v. Board of Education*, 83 S.Ct. 1433.

See: *Monroe v. Pape*, 81 S.Ct. 473

See: *Georgevich v. Strauss*, C.A.3d 1985 772 F.2d 1078, 1087 N.7.
   Certiorari Denied 106 S.Ct. 1229.

a)   In the 1961 decision, *Monroe v. Pape*, the Supreme Court announced the unexceptionable rule that state judicial remedies need not be exhausted before bringing a federal civil rights action.

b)   Two years later in *McNeese v. Board of Education*, the Supreme Court said there was no need to exhaust administrative remedies, either.

c)   In 1982, when the Supreme Court was faced squarely with the question in *Patsy v. Board of Regents of Florida*, it held that the exhaustion of state administrative remedies shall not be required as a prerequisite to bringing an action pursuant to §1983.

d)   In 1985, among many others, the case of *Georgevich v. Strauss* held, in light of *Patsy v. Board of Regents*, that exhaustion cannot be required in a

3

§1983 action when the defense of federal state comity concerns is raised; certiorari was denied.

5. Plaintiffs contend that it simply could not be more clear that they are manifestly NOT required to either invoke or exhaust any judicial or administrative remedy in this case.

6. DSS Defendants' counsel should be sanctioned for attempting to mislead the Court by asserting in his baseless Rule 12 Motion that they were so required and continuing to press his imposture upon the Court by filing a falsified Notice of Fair Hearing; a baseless Notice of Relinquishment of Rights; and a baseless Notice of Dismissal with the Court.

## PART TWO

DSS Defendants' 'Facts Alleged' Confuted with Citations From the Record.

1. Defendants assert on page 3 that school defendants' conduct was "nothing more than the normal, usual concern of school authorities for a child not doing well in school."

Defendants' statement is directly contradicted by the facts alleged in Plaintiffs' Complaint, at ¶¶ 52(b), 61, 79; that School Defendants were not interested in promoting the child's educational progress. They were interested in preventing it, at ¶¶67, 58, 65, 66, 67.

2. Defendants assert on page 3 that the classroom teacher's incompetence meant that "school principal, Donna (sic) Kelly, was incompetent."

4

Defendants' statement fails to encompass the facts alleged in Plaintiffs' Complaint, to wit: Defendant Doreen Kelly was incompetent because she knew for months that child was being persecuted and was emotionally distraught, at ¶¶ 20 and because she did absolutely nothing about it; because she failed to organize, manage and evaluate child's educational program as mandated by law, at ¶¶52(a), 52(b), ¶59 and in Exhibits B, D, K attached to Plaintiffs' Complaint.

3. Defendants assert on page 3 that the case concerned a dispute about "what school authorities contended was her parents' refusal to cooperate in Samantha's proper education and obstruction of the school's effort to place the girl in special education classes.

Defendants' statement is directly contradicted by the facts alleged in Plaintiffs' complaint; to wit: School Defendants' affirmative steps to undermine child's education, at ¶¶25(a), 52(b), 60, 65(b); 67; School Defendants' affirmative steps to obstruct parents' efforts to obtain an appropriate education for their child, at ¶¶58, 61, 66, 70, 73, 120, School Defendants' malicious prosecution of parents in order to prevent them from advocating for their daughter's educational rights, at ¶¶25(b), 27, 28, 93, 99, 212.

4. Defendants assert on page 4 that Plaintiffs "interpret – or claim they interpret – Defendant Kelly's efforts to help Samantha as a self-serving conspiracy."

5

ill children by state law, at ¶¶60, 61, 119, 120, 121, driving up costs significantly.

7.      Defendants assert on page 4 that Plaintiffs allege "placing Samantha in special education rather than private tutoring generated a 'defacto' income of well over $75,000."

Defendants' statement is directly contradicted by the facts alleged in Plaintiffs' Complaint, to wit: Samantha was never placed in special education, at ¶27, _____ ; Defendant Kelly generated her 'defacto' income by refusing to provide any instruction to child, amounting to over 800 hours of non-existent instruction over a period of 13 months, at ¶¶52, 52(a), 52(b), 75, Exhibit F; 800 hours that the law of the Commonwealth required her to provide to child. The value of those 800 hours was retained by Defendant Kelly and utilized in the affairs of the enterprise, primarily in the re-hiring of Defendant Kyed in September 2001, at ¶¶76, 84(a)(b)(c).

8.      Defendants assert on page 5 that "In November 2001, School Defendants assigned Samantha a home tutor."

Defendants' statement is a misstatement of facts alleged in Plaintiffs' Complaint, to wit: Defendant Kyed arrived in May 2001 to provide three and one-half hours of home instruction PER WEEK, at ¶¶52(a), 52(b) _____ ; Defendant Kyed arrived in September 2001 to provide three and one-half

7

hours of home instruction PER WEEK, at ¶76_____;

Mrs. Kebello was assigned by Defendant Kelly in November 2001 to provide four hours of home instruction as a direct result of Plaintiffs' September 2001 Complaint to the Massachusetts Board of Education regarding non-existent instruction, at ¶89_____.

9. Defendants assert on page 5 that "as of February 2002, Plaintiffs still refused to place Samantha in special education classes."

Defendants' statement is directly contradicted by facts alleged in Plaintiffs' Complaint, to wit: Plaintiffs agreed with Defendant Loud in early February to have their child evaluated for §504 needs and to pay for it themselves in return for compensatory instruction time to remedy deficit in hours of instruction, at ¶¶100, 101, 102, Exhibit I, Exhibit J.

10. Defendants assert on page 5 that "The school reported Plaintiffs' recalcitrance to DSS."

Defendants' statement is directly contradicted by facts alleged in Plaintiffs' Complaint, to wit: Plaintiffs were reported to DSS for allegedly "refusing to allow cursive handwriting", at ¶123(d); Plaintiffs were reported for allegedly "refusing to allow discussions of race, religion, sexual orientation and homosexual congressmen" in arithmetic class, at ¶123(c); Plaintiffs were reported for allegedly "shopping for physicians", at ¶123(e); Plaintiffs were reported for allegedly giving their child medicine that was not prescribed, at ¶123(g); Plaintiffs were reported to DSS for allegedly falsifying their

8

daughter's birth certificate, at ¶212_____; Plaintiffs were reported to DSS for allegedly dressing in black and being humorless, at ¶12; Plaintiffs were reported to DSS for allegedly taking their child to their summer camp when only one parent was present, at ¶206_____.

11.   Defendants assert on page 6 that DSS Defendant Hawkes-Sullivan "insisted that the report be supported."

Defendants' statement is directly contradicted by the facts alleged in Plaintiffs' Complaint, to wit:  Defendant Hawkes-Sullivan did more than "insist".  She fabricated a physician's statement and used it to justify her support of preposterous and baseless charges, at ¶130, Appendix, page 30, ¶7.

12.   Defendants assert on page 6 that "Plaintiffs allege that all Defendants-DSS and School officials-conspired to 'prosecute' them ... through a concerted scheme of federal and other crimes sufficient to form a RICO predicate."

Defendants' statement is confuted by facts alleged in Plaintiffs' Complaint, to wit:  Plaintiffs were injured in their person and their property as a <u>direct result</u> of a <u>pattern of racketeering activity</u> that consisted of three separate schemes and many different predicate acts, at ¶¶36, 38, 39, 40, 43; the purpose of this racketeering activity was to have income to invest in the enterprise, at ¶105, to maintain control over the enterprise, at ¶¶48, 103, 107, and to conduct the affairs of the enterprise through a pattern of racketeering

9

activity that would redound to the mutual benefit of all defendants associated with the enterprise, at ¶¶76, 109.

13. Defendants assert in footnote No. 5 on page 6 that "There is no allegation that Plaintiffs attempted to protect their child before or during this alleged seizure or notified law enforcement."

Defendants' statement is clearly confuted by facts alleged in Plaintiffs' Complaint and in their affidavits (at docket entry number 59 (10/31/05)) to wit: any resistance to DSS Defendants' demands to enter home or to sequester child for interrogation would trigger removal of child from her family home (at Complaint ¶130) under police guard; Plaintiffs were well aware of DSS' reputation as a "child snatching" agency, (at affidavit No. 59 JA, ¶6); Plaintiffs felt compelled to subject themselves to DSS Defendants' demands and to submit to their outrageous interrogation out of fear of retaliation and the forced removal of their daughter from their home, (at affidavit No. 59 JA ¶7 and Complaint Exhibit L).

Therefore, in consideration of the foregoing and in conjunction with their Motion and Memorandum in Opposition filed October 31, 2005, Plaintiffs re-iterate their opposition to DSS Defendants' Rule 12 Motion to Dismiss and move that it be judged void of legal significance and denied.

Respectfully submitted,

February 5, 2006

_____
Peter Tinkham, pro se

_____
Juliet Alexander, pro se

P.O. Box 1075
Easton, MA 02334
(207) 364-3964

## CERTIFICATE OF SERVICE

I hereby certify that I have served via first class mail a true copy of the above Motion to Enlarge and its accompanying addendum upon counsel for the other parties, Stephen Dick, AAG, and John Davis, Esquire on February 15, 2006.

_____
Peter Tinkham, pro se

11

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


PETER TINKHAM
    V.                    CIVIL ACTION NO:   05-10470 MLW
Doreen R. Kelly


           AFFIDAVIT OF JULIET ALEXANDER


I, Juliet Alexander, state under oath as follows:

1.   I am a Plaintiff pro se in the above-captioned case.

2.   On July 15, 2005, I received a letter from Attorney Stephen Dick, requesting an immediate phonecall.  I complied forthwith.

3.   The sum and substance of my conversation with Attorney Dick is as follows:

<u>Attorney Dick</u>:  I am notifying you that I intend to bring a Motion for Summary Judgement against you in the  next few days.
<u>J. Alexander</u>:  Isn't that a bit premature since there is really no record in the case?
<u>Attorney Dick</u>:  No.
<u>J. Alexander</u>:  May I ask who you are defending in the case?
<u>Attorney Dick</u>:  I don't have to represent anyone in this matter.
<u>J. Alexander</u>:  Thank you and goodbye.

4.   After the conversation ended on the above note, I remembered reading that counsel are supposed to confer to narrow or resolve  any or all issues to be brought by Motion before bringing a Motion.  After I composed myself, I phoned Attorney Dick back a few minutes later.  The sum and substance of this second conversation with Attorney Dick is as follows:

<u>J. Alexander</u>:  Was that last phonecall your attempt to confer to narrow or   resolve the issues in your proposed Motion?

<u>Attorney Dick</u>: I don't know what you are talking about.

<u>J. Alexander</u>: Rule 7 of the Federal Rules requires that counsel confer to resolve or narrow any issues that are the substance of any motion. If you want to confer about your Motion for Summary Judgement, you might begin by telling me what the grounds are that you are basing your motion on.

<u>Attorney Dick</u>: You cannot sue the State. The Eleventh Amendment bars all suits against the State.

<u>J. Alexander</u>: I am not suing the State.

<u>Attorney Dick</u>: You can't sue state employees, either.

<u>J. Alexander</u>: I certainly can in their individual capacity.

<u>Attorney Dick</u>: No, you cannot. The Eleventh Amendment bars you there as well.

<u>J. Alexander</u>: Well, I don't know. You could be right. I have never studied the Eleventh Amendment (actually I had never even READ the Eleventh Amendment.) It is possible that I could be wrong. Thank you for bringing it to my attention. I will certainly read up on the matter.

5. I have NEVER conferred with Attorney Dick at any time about a Rule 12(b)(1) Motion to Dismiss based on injury in fact standing jurisdiction, domestic relations exception, or failure to exhaust administrative remedies. I have NEVER conferred with Attorney Dick at any time about a Rule 12(b)(6) Motion to Dismiss based on failure to correctly allege RICO predicate acts.

6. I had assumed from Attorney Dick's emphasis on the Eleventh Amendment that he was going to intervene on behalf of the Commonwealth vis a vis our claim for declaratory relief. Attorney Dick has never notified me by copy of his appearance filed on August 31, 2005, or by letter or telephone call that he, in fact, represented the six DSS Defendants in this case.

7. My first hint as to who or what Attorney Dick represented was his October 3, 2005 notice to the Court, copied to me, that DSS Defendants consented to the transfer of the case.

8. This impression was confirmed several days later with the arrival of DSS Defendants' Motion to Dismiss minus Attorney Dick's Affidavit in support of his Rule 7 Certificate.

9. I wrote a letter to Attorney Dick on October 18, 2005, requesting a copy of this Affidavit at his earliest convenience.

10. As of today, Attorney Dick has not responded to that request.

11. I obtained a copy of this Affidavit myself by driving 3½ hours from Maine to the Clerk's office on November 1, 2005.

Sworn under the penalties of perjury, this ____ day of November, 2005

_____
Juliet Alexander
P.O. Box 1075
Easton, MA  02334
207 - 364-3964

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER Tinkham
    v.                    CIVIL ACTION NO:  )05-10470 MLW
DOREEN R. KELLY


AFFIDAVIT OF PETER TINKHAM

I, Peter Tinkham, state under oath as follows:

1.   I am a Plaintiff, pro se in the above-captioned case.

2.   On August 11, 2005, I received a letter from Attorney Stephen Dick, AAG., dated July 12, 2005 but postmarked August 4, 2005 in which he asked me to notify him if we consented to DSS's offer of a Fair Hearing. He also asked me to make sure I sent a copy of all motions to counsel.

3.   On August 17, 2005, I sent Attorney Dick a letter stating that I would be pleased to send him all correspondence if he would have the courtesy to tell me who or what he represented in the above-captioned case.

4.   Attorney Dick has never responded to my letter nor did he send me a copy of his appearance on behalf of the six DSS Defendants which he filed with the Court on August 31, 2005, although he certified under oath on that document that he had done so.

5.   My first impression that Attorney Dick was representing the Commonwealth on the issue of declaratory relief was disabused when I received his consent form on October 3, 2005, followed a few days later by his Motion to Dismiss. This Motion to Dismiss did not include Attorney Dick's Affidavit or the attached documents to his motion.

6. Although my wife sent a letter to Attorney Dick on October 18, 2005, at my request, asking him to forward a copy of this missing affidavit, he has not done so.

7. In early June 2005, I had a phone installed at a house I was repairing and where my wife, who is ill, spent most of her time. This phone number, 207-364-3964, was furnished to the Court in early July and written on every motion and almost every letter sent to the Court thereafter. This number included the service of message and caller I.D., and was utilized in early July by defense counsel Davis' office to communicate with my wife on a procedural matter regarding this case.

8. The second number written on all documents sent to the Court by Plaintiffs, 207-585-2137, is the seasonal number at my summer camp and was included because I wanted to insure that we would not miss out on ANY call from the Court.

9. When I moved to my new residence in August 2005, I had the number, 207-364-3964, transferred to my new home in order to have no confusion about where I could be reached. I cancelled our seasonal number to our camp in October and promptly notified the Court of same.

10. Attorney Dick has never left a message at this number or been reflected in the caller I.D. until Friday, October 22, 2005. This message, requesting a return phone call as soon as possible, was honored with a phone call to Attorney Dick's office on Monday, October 25, 2005.

Signed under the penalties of perjury this ___ day of November, 2005

Peter Tinkham, Pro se
P.O. BOX 1075
Easton, MA   02334
207-364-3964