UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05-10470-MLW

PETER TINKHAM, JULIET ALEXANDER,
and SAMANTHA TINKHAM, pro se,
        Plaintiffs,
v.

DOREEN R. KELLY, BARRY L.
MINTZER, JEAN CURTIS LOUD,
ROBERT L. DOYLE, DONNA KYED,
MARGARET VERRET, JOAN
BERNHEIMER, JUDI ALBERTON,
CLAIRE JACKSON, ERIN L. SENGES,
BARBARA A. HAWKES-SULLIVAN,
BARNEY KEEZELL, STEPHANIE
THOMAS, ERICA COHEN, and
KENNETH PONTES,
        Defendants.

## OPPOSITION TO PLAINTIFFS' "MOTION TO ENLARGE MEMORANDUM," "OBJECTIONS TO MAGISTRATE JUDGE ALEXANDER'S REPORT AND RECOMMENDATION, " AND "MOTION TO EXPOSE SANCTIONS"

Plaintiffs essentially move to supplement their Memorandum of Law filed in opposition

to the DSS Defendants' October 6, 2005 Motion to Dismiss the Complaint (#53). That Motion

was ruled on, and Magistrate Judge Alexander's Recommendation to dismiss the Complaint

without prejudice entered on the docket, on February 6, 2006. (#76). The Magistrate's report

covered almost all of the issues here raised.[1]

---

[1]Defendants note that there have now been SOME 80 papers filed, the majority by
Plaintiffs, in a matter that has not yet even gone to a scheduling conference. Judge Alexander's
description of the Complaint, -- which is "59 pages long, includes 226 numbered paragraphs,
numerous sub-paragraphs, and an additional 30 pages of appendices, includes 35 separate counts
(although they are numbered one through thirty-five)" Recommendation and Report at 4
(parenthetical in original) --  as "not easily comprehended and bordering also on vexatious," is

Plaintiffs do not describe the facts they contend were unknown to them at the time they filed their original Opposition to the Motion to dismiss. Moreover, the extrinsic evidence they contend Magistrate Alexander improperly considered was in fact properly considered on the DSS Defendants Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), <u>Valentin v. Hospital Bella Vista</u>, 254 F.3d 358, 363 (1st Cir. 2001), for lack of standing, the long-held federal exception to domestic relations jurisdiction, and failure to exhaust state administrative remedies as well as the comprehensive framework for state judicial review of their grievances.[2]

In any event, Plaintiffs are in no manner prejudiced by the Judge Magistrate's Report, her dismissal being without prejudice to file an amended, organized and lucid complaint.

Plaintiffs' prolix Objections are another re-hash of their arguments opposing all Defendants' Motions to Dismiss, and, for the most part, nothing but conclusions.[3] Their Objections to Judge Alexander's refusal to strike DSS' latest Notice of Fair Hearing, p.5 ¶3 -- offered in support of the contention that Plaintiffs not only failed to attend their fair hearing, but have failed throughout the entire process even to engage, let alone exhaust, the fundamental framework of state administrative and judicial review available to them as of absolute right -- is

---

arguably charitable.

[2]The DSS Defendants respectfully suggest that the issues pertaining to subject matter jurisdiction -- no standing to sue based on no cognizable injuries, because, as a matter of law, Plaintiffs cannot and did not sustain the central injuries alleged (criminal investigation and listing on the list of alleged perpetrators), Defendants' Motion to Dismiss at 7-12 ; and the domestic relations exception to federal jurisdiction, Motion at 12-13-- should have been addressed first. <u>Northeast Erectors Ass'n. v. Sec'y of Labor</u>, 62 F. 3d 37, 39 (1st Cir. 1991).

[3]Plaintiffs' "Motion to Strike" defense counsel's affidavit, Objections p.3-4 #1, is nothing but conclusions, merely gainsaying the averments therein, and contending that Judge Alexander was "not reasonable" in her reading.

incomprehensible. Judge Alexander correctly found that Plaintiffs' Motions in Limine, p.5, ¶3, were re-hashes of previous arguments ant not Motions in Limine.

The balance of the Objections are repetitions of already-briefed and decided issues, adding nothing but unsubstantiated, conclusionary argument.

Plaintiffs' fulminations at ¶¶ 1, 2 of their Motion for Sanctions offer nothing but the conclusion that defense counsel failed to investigate the claim under Rule 11. Pars. 3, 4 re-argue that the DSS defendants' Motion to Dismiss was filed after the Answer was due, disregarding Judge Alexander's discretion to consider the pleading regardless.

Plaintiffs' bare contention that the DSS defendants' defenses were frivolous is, without more, unsubstantiated and frivolous in itself, as are the utterly unsupported, flatly incorrect, conclusions of law advanced at ¶¶6-8.

As to ¶¶ 9, 10, Plaintiffs offer absolutely no evidence of their conclusionary statements that defense counsel "knowingly misrepresented," etc., and "deliberately falsified," etc., facts in affidavits or anything else. Nor is there any evidence that Plaintiffs' Fair Hearing was an "imposture." Par. 11.[4]

Plaintiffs allege no injury or prejudice from the various charges they list at ¶12, all of which charges are denied. Again, ¶13 is nothing but conclusion.

_____

[4]As the DSS defendants have argued time and again, there is only one falseness in this case: the central allegation that Plaintiffs were "criminally investigated," and placed on the list of alleged perpetrators. These are intentional, knowingly false allegations, impossible as a matter of law, and the basis of a vexatious, frivolous lawsuit in which 80 some-odd papers have thus far been filed even before a scheduling conference. Despite the Defendants' pleadings -- attached, DSS Defendants' Motion to Dismiss, attached, I(A)2, at 8-10; DSS Defendants' Opposition to Plaintiffs' "Motions in Limine," n.1. -- Plaintiffs have not yet uttered a word in defense of the contention that the Complaint is based on at least two falsehoods, both indispensably central to this matter. Nor has the Court thus far addressed these palpably sanctionable lies.

## **CONCLUSION**

_____For the above reasons, the Court should deny Plaintiffs' Motions, and sanction

Plaintiffs for their false pleading..

Defendants,
Erin L. Senges, Barbara A. Hawkes-
Sullivan, Barney Keezell, Stephanie Thomas
Brown, and Erica Cohen

By Their Attorney,

_____/s/_____
Stephen Dick, BBO #560508
Assistant Attorney General
Trial Division/Government Bureau
1 Ashburton Place
Boston MA 02108
617-727-2200
Fax: 617-727-3076
stephen.dick@ago.state.ma.us

**CERTIFICATE OF SERVICE**

I certify that I served one true copy each of the above Opposition to Plaintiffs' "Motion to Enlarge Memorandum upon each Plaintiffs pro se, via first-class mail addressed to Peter Tinkham, PO Box 466, Hopkinton MA 01748-9998, and Juliet Alexander, PO Box 466, Hopkinton MA 01748-9998, on **February 28, 2006**

_____/s/_____
Stephen Dick

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER TINKHAM, JULIET ALEXANDER,
and SAMANTHA TINKHAM, pro se,
          Plaintiffs,
v.

DOREEN R. KELLY, BARRY L.
MINTZER, JEAN CURTIS LOUD,
ROBERT L. DOYLE, DONNA KYED,
MARGARET VERRET, JOAN
BERNHEIMER, JUDI ALBERTON,
CLAIRE JACKSON, ERIN L. SENGES,
BARBARA A. HAWKES-SULLIVAN,
BARNEY KEEZELL, STEPHANIE
THOMAS BROWN, ERICA COHEN, and
KENNETH PONTES,
          Defendants.

CIVIL ACTION
NO. 05-10470-MLW

## MOTION OF DEFENDANTS ERIN L. SENGES, BARBARA A. HAWKES-SULLIVAN, BARNEY KEEZELL, STEPHANIE THOMAS BROWN, ERICA COHEN, AND KENNETH PONTES PURSUANT TO FED. RR. CIV. P. 12(b)(1), (6) TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

_____Purely as a matter of law, Plaintiffs cannot, on their allegations, have been investigated

for criminal conduct or listed as alleged perpetrators.  Plaintiffs complain of injuries they never

sustained, are without standing , and confer no jurisdiction on the Court.

The Complaint is furthermore barred by the "domestic relations exception" to federal

jurisdiction.

Further and independently fatal is that Plaintiffs have yet to invoke even the first,

administrative, level of comprehensive state remedies available to them, never mind state judicial

review. They have not been deprived of rights; to the contrary, they have chosen not to exercise

them.

Finally, Plaintiffs' allegations that all Defendants participated in a RICO scheme are based on threadbare conclusions and characterizations of conduct that was clearly nothing more than the normal, usual concern of school authorities for a child not doing well in school, which DSS looked into upon a mandated school official's report. The allegations of fraud being almost entirely conclusory instead of factual, the entire Complaint fails under Fed. R. Civ. P. 9.

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants ERIN L. SENGES, BARBARA A. (HAWKES) SULLIVAN, BARNEY KEEZELL, STEPHANIE THOMAS BROWN, ERICA COHEN, and KENNETH PONTES (the "DSS Defendants") move to dismiss the Complaint pursuant to Fed. RR. Civ. P, 12(b)(1), (9), for lack of subject matter jurisdiction and failure to state a claim for relief.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2

Please see attached Certificate with Affidavit of Stephen Dick.

## FACTS ALLEGED

Plaintiffs Tinkham and Alexander are the adoptive parents of Plaintiff Samantha Tinkham. Complaint ¶¶8, 10, 11.[1]

Plaintiffs allege that, in March, 2002, they were "'investigated'" by DSS, "found guilty without benefit of trial," ¶33, of the neglect of Samantha, ¶¶130, 148, 155a, 159, and listed as

---

[1]The DSS Defendants join with the Motion to Dismiss filed on July 27, 2005. The DSS Defendants reiterate the argument in the July 27th filing  that the Complaint of Samantha, a minor child, who cannot appear pro se and cannot be represented by her lay parents, must be dismissed. The parents misconstrue this principle in their opposition to the Motion, citing authority that parents may sue on behalf of their minor children. This is of course correct but irrelevant, as lay persons may "bring" actions on their children's behalf, but may not act as their children's, or anyone's, attorneys.

perpetrators in the central registry. ¶¶133, 163.

This "investigation" and "prosecution" deprived Plaintiffs of their rights under, among others, the first, fifth, and ninth amendments, ¶15(e), third amendment, ¶163, and fourteenth amendment, ¶165, and amounted to an "administrative Bill of Attainder," ¶171b, all as part of a conspiracy among and between educators in Sharon MA, and DSS officials, e.g., ¶14, to deprive Plaintiffs of their liberty and property. ¶175. The conspiracy involved acts of mail fraud, 18 USC 1341; wire fraud, 18 USC 1343, extortion, 18 USC 1951, obstruction, 18 USC 1503, subversion, 18 USC 1510, 1952 and conspiracy,18 USC 1962. ¶¶43, 111.

These acts amount to a pattern of racketeering under the Racketeer Influenced Corrupt Organizations Act (RICO). 18 USC 1961 et seq. ¶¶44, 46.

The case concerns a dispute between Plaintiffs on the one hand, and Samantha's school and DSS on the other, concerning what school authorities contended was her parents' refusal to cooperate in Samantha's proper education, and obstruction of the school's effort to place the girl in special ed classes.

In September, 2000, ¶17, Samantha entered the Cottage Street Elementary School in Sharon MA. ¶19,[2] with an undescribed "cosmetic disfigurement."¶17. She was knocked unconscious on her first day, *id*., persecuted and humiliated by her classmates, ¶18, and went backwards academically for the next six months. ¶17. Her teacher was unable to control the classroom pandemonium, ¶18, which means that the school principal, defendant Donna Kelly, ¶20, was incompetent. ¶19.

---

[2]Samantha was two years old in 1992. ¶10. She was therefore 10 when she first entered school in 2000.

The classroom pandemonium caused by Kelly's management incompetence exacerbated the metabolic disorder which caused Samantha's disfigurement. ¶19. In February, 2001, Samantha "ripped almost all of the hair on the top of her head and piled it under her desk." *Id*. This led to a consultation among Plaintiffs and defendant Kelly. ¶20 Ms. Kelly told Plaintiffs that Samantha had been isolated and shunned for months, *id*., often wept uncontrollably, *id*., and threw her lunch away uneaten. *Id*. Plaintiffs "weighed [Samantha] as a result of the conversation and noted a 12-pound weight loss."[3]

Plaintiffs interpret -- or claim they interpret -- Ms. Kelly's efforts to help Samantha as a self-serving conspiracy:

> This "crisis" had made [Plaintiffs] defacto members
> of a discrete category of parents who are intuitively
> and unreasonably despised by school principals and
> not a little feared.

¶23a.

Plaintiffs claim that the Sharon public schools "custom" of enrolling problem students in special education classes was a ruse to protect the "principal's financial bottom line." ¶23c. Out of fear that Plaintiffs' requests for private tutoring might deprive Kelly of the money "she can spend on herself and her pet projects," ¶24, Kelly determined to enroll Samantha in special ed "by whatever means necessary." *Id*. Kelly approved such a plan in March, 2001. *Id*.

Plaintiffs allege that placing Samantha in special ed rather than private tutoring generated a "defacto income" of "well over $75,000," for Kelly, ¶26, from a pattern of racketeering activity, ¶105, which money was, "in fact, the property of the Plaintiffs," *id*., though they do not

---

[3]How Plaintiffs had failed to notice a 12-pound weight loss in their 10-year-old between September, 2000 and February 2001 is not alleged.

allege how.

In November, 2001, the Sharon school system assigned Samantha a home tutor, ¶28, for the balance of the school year until June 18, 2002. **Plaintiffs' Exhibit K, Letter to Plaintiffs from Defendant Doreen R. Kelly, Principal, Cottage Street School.**

As of February, 2002, Plaintiffs still refused to place Samantha in special education classes, ¶27, despite such manifest problems as her weight loss and hair-tearing. The school reported Plaintiffs' recalcitrance to DSS. ¶29.

Plaintiffs allege that in March, 2002, DSS Defendant Erin Senges informed them "that charges of child abuse have been filed against them."¶122.[4] The report alleged that Plaintiffs refused to allow a Special Education evaluation, ¶123a; that Samantha was two years behind in school, ¶123b; that the parents forbade Samantha from writing cursive script, ¶123d; refused to consent to communication between school personnel and Samantha's doctors, ¶123e; were administering unprescribed medications, ¶123g; and providing Samantha no therapy for her disorder. ¶123h.

Plaintiffs claim to have been "'investigated' on the credit of a general warrant," and "prosecuted" by DSS. ¶33. They say that on March 6, 2002, Defendant Senges visited their home "without a warrant." ¶126. There, she searched for "the fruits and instrumentalities of a crime." ¶127. She also "seized" Samantha, brought the child to her bedroom, shut the door, and

---

[4]In fact, the communication referred to was a form notice of home visitation. **Plaintiffs' Exhibit L.** The boilerplate recites that "DSS has received a report that your child(ren) <u>may have been</u> abused or neglected." *Id.* (Emphasis added). The specific allegation is of neglect only. *Id.* The paper does not charge Plaintiffs with anything; it merely informs them of an impending home visit.

interrogated her for 25 minutes. ¶127.[5]

Although Ms. Senges saw no evidence of abuse or neglect, ¶¶128, 129, DSS Defendant Barbara (Hawkes) Sullivan insisted that the report be supported. ¶130. Defendant Senges advised Plaintiffs to "'cooperate' with this verdict or 'things will get messy.'" ¶130.

In April of 2002, DSS Defendant Stephanie Thomas took over the case, ¶131, and proposed to "interrogate[]" Plaintiffs. ¶132. When Plaintiffs refused to be "interrogated." ¶¶ 132, 133,  Thomas caused them to be listed as alleged perpetrators in the central registry, ¶133, and Plaintiffs were "sentenced to life registration as 'perpetrators.'" ¶33.

DSS closed Plaintiffs' case a year after opening it, in March, 2003. ¶34.

Plaintiffs allege that all Defendants -- DSS and Sharon school officials -- conspired to "prosecute" them, deprive them of liberty, property and their daughter through a concerted scheme of federal and other crimes sufficient to form a RICO predicate.

---

[5]There is no allegation that Plaintiffs attempted to protect their child before or during this alleged seizure, or notified law enforcement.

# ARGUMENT[6]

## I.  THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF JURISDICTION.

### A.  Plaintiffs Are Not Cognizably Uninjured and Are Without Standing to Sue.

#### 1.  <u>Standing is jurisdictional and requires injury</u>.

The federal courts being courts of limited jurisdiction, *Rhode Island v. EPA*, 378 F.3d 19,

22 (1st Cir. 2004), federal plaintiffs have the burden to plead and prove standing as "an

---

[6]On a Motion to Dismiss, a complaint is given a deferential reading and "the threshold demands on the pleader are low." *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 23 (1st Cir. 1991). Pro se pleadings are <u>more</u> liberally construed against even <u>less</u> stringent standards. *Hurney v. Carver*, 602 F.2d 993, 995 (1st Cir. 1979). Furthermore, where the pleading is merely "inartful," a motion to dismiss is not the proper remedy. *Sisbarro v. Warden, Massachusetts State Penitentiary*, 592 F.2d 1, 2 (1st Cir. 1979)

Nevertheless, the pleading rules are "not entirely toothless." *Fleming*, 922 F.2d at 23, and the "minimal requirements are not tantamount to nonexistent requirements." *Gilbert v. Cambridge*, 932 F.2d 51, 62 (1st Cir. 1991). Even in the <u>pro se</u> setting, a trial court is simply not required to go so far as to "conjure up unpleaded facts to support conclusory allegations." *Hurney*, 602 F.2d at 995; *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979). A plaintiff must set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Roth v. United States*, 952 F.2d 611, 613 (1st Cir. 1991), quoting, *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). The plaintiff cannot rely upon "subjective characterizations or unsubstantiated conclusions. *Fleming*, 922 F.2d at 23. "Empirically unverifiable' conclusions, not logically compelled, or at least supported by the stated facts," deserve no deference. *United States v. AVX Corp.*, 962 F.2d 108, 114 n.8 (1st Cir. 1992); *Dartmouth Review*, 889 F.2d at 16. The deference due the allegations of a complaint does not extend to "self-serving generalities" or "unsubstantiated conclusions." *Gilbert*, 932 F.2d at 62. "[O]nly when conclusions are supported by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, [do] 'conclusions' become 'facts' for pleading purposes." Id.

"A reviewing court 'need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' *Correa Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990), even when such phantoms are robed by the pleader in the guise of facts. We have been particularly insistent in section 1983 cases to require a fair degree of specificity -- a foundation of material facts -- to survive a motion to dismiss." *Gilbert*, 932 F.2d at 62, citing, *Dewey v. University of New Hampshire*, 694 F. 2, 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983), *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977), cert. denied, 434 U.S. 1077 (1978).

indispensable component of federal court jurisdiction." *Osediacz v. City of Cranston*, 2005 WL 1575628 (1ˢᵗ Cir. 2005) (headnotes 1,2), citing *Allen v. Wright*, 468 U.S. 727, 750 (1985).

Standing requires the three-part showing of (1) injury, (2) traceable to defendant's conduct, (3) redressable by the relief sought. *Osediacz*, (hn 3,4,5), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

2.     <u>As a matter of law, Plaintiffs have not sustained the injuries they allege, i.e., "prosecution," criminal investigation, and listing as "perpetrators, because they do not allege a referral to the District Attorney, or that they were reported for such crimes as murder sexual abuse exploitation  or causing brain damage or other such serious injury, but merely of not properly seeing to Samantha's educational needs.</u>

Stripped to its essentials, the Complaint attempts to gin up allegations that Plaintiffs were branded as criminals, unconstitutionally, without trial or process, and placed on the list of alleged perpetrators,[7] after a criminal investigation that violated their constitutional rights, all effected by a RICO conspiracy.

As a matter of law, there was no criminal investigation, no criminal accusation, and Plaintiffs cannot have been placed on the Registry of Alleged Perpetrators.

Abusers are placed on the list of alleged perpetrators only when the abuse allegations against them have been referred to the District Attorney. 110 CMR 4.37; G.L. c. 119, §51B(4). Such allegations must be of death, sexual assault, brain damage or other major impairment, sexual exploitation, or serious physical abuse or injury to the child. *Id*; 110 CMR 4.51.  The

---

[7]The Registry of Alleged Perpetrators is a component of the Central Registry. 110 CMR 4.36; G.L. c. 119, §51F. The Central Registry contains identifying information of children reported under §§ 51A or 51B, as having been abused or neglected. The Registry of Alleged Perpetrators identifies perpetrators of sexual or serious physical abuse by name, date of birth, Social Security Number, sex address, date of listing, allegation, cross reference to victim, and relationship to victim. 110 CMR 4.36.

report to the District Attorney must be made within five days of the supported decision of the abuse. *Id*.

Plaintiffs were reported for refusing to attend to the educational and emotional needs of their child. They allege that their case was dropped in March, 2003. ¶34. While it may be that their emotional neglect caused their adopted daughter to pull her own hair out, Plaintiffs do not allege that DSS supported or made any finding related to sexual assault, brain damage, or any of the other conduct which must be reported to law enforcement. 110 CMR 4.51. They do not allege that they were reported to the District Attorney. *Id*. They cannot have been placed be on the list of alleged perpetrators.

DSS does not "prosecute." It investigates reports of possible abuse and neglect. G.L. c. 119, §§51A, B.[8]  The proceedings are civil, not criminal in nature. *Covell v. Dep't of Social Services*, 42 Mass.App.Ct. 427, 432, 677 N.E.2d 1158 (1997); *Arnone v. Comm'r of DSS*, 43

---

[8] The following explanation of the process is verbatim from *Cobble v. Commissioner of Dept. of Social Services,* 430 Mass. 385, 386 n.3 (1999):

> On receiving a 51A report of possible abuse or neglect, the department is required to investigate and, if it has "reasonable cause" to believe the report, to "support" it and take remedial action, either offering social services, placing the child in protective custody, or referring the matter to the district attorney for criminal prosecution, depending on the severity of the abuse.  See, G.L. c. 119, § 51B; 110 Code Mass. Regs. § 4.32(2) (1996).  "Reasonable Cause to believe" that abuse has occurred means "a collection of facts, knowledge or observations which tend to support or are consistent with the allegations."  110 Code Mass. Regs. § 4.32(2) (1996).  See *Care & Protection of Robert*, 408 Mass. 52, 63, 556 N.E.2d 993 (1990) ("reasonable cause" serves a "threshold function" and means "known or suspected instances of child abuse and neglect").

A decision to "support" a report means only that the department has reason to believe that an incident of child abuse or neglect has occurred and that some caretaker is responsible;  it does not constitute a finding with regard to the identity of the perpetrator. 110 Code Mass. Regs. §4.32(2).

Mass.App.Ct. 33, 36, 680 N.E.2d 945 (1997).[9]

Prosecution may or may not ensue upon a report to law enforcement, but no such report is alleged. Nor were Plaintiffs accused of a crime. There was no criminal investigation to "impede," ¶40, or through which to deprive Plaintiffs of their property. *Id.* Defendant Senges's visit to Plaintiffs' home was not part of a criminal investigation, nor did Defendant Senges visit the home on false pretenses or without Plaintiffs' "informed consent." Plaintiffs admitted her to their home as part of the 51B, civil, investigation, the purpose she is alleged to have performed.[10]

Plaintiffs were not, as they claim, branded as "perpetrators." Their allegations are insufficient to support the injuries they allege. They are therefore without standing to sue, *Osediacz*, (hn 3,4,5), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), and confer no jurisdiction on the Court. *Osediacz*, (hn 1,2), citing *Allen*, 468 U.S. at 750 (1985).

---

[9]Allegations sufficient to require a report to the D.A., though civil until the point of prosecution, have nevertheless been regarded as approaching the criminal realm. In *Covell*, a stepfather *was* reported for the sexual abuse of his stepdaughter, listed as a perpetrator, reported to the district attorney, prosecuted, but then acquitted. The Appeals Court neutralized a technical flaw in the stepfather's application for remand to DSS (to present his acquittal) on the ground, *inter alia*, that a listing as a perpetrator, though civil, "verges on the criminal," *Covell*, at 432, promising dire consequences to those listed as perpetrators.

Similarly, *Arnone* held that the evidence of such serious could not be exclusively hearsay -- "particular[ly] the hearsay statements of very young children," given the "criminal overtones" of a finding of emotional maltreatment. *Arnone*, at 36-37.

Here, no finding of sexual abuse -- or of abuse, for that matter -- or of emotional maltreatment, is alleged. No criminal stigma attached to the report that Plaintiffs were uncooperative with school authorities attempting to monitor their daughter's home schooling and emotional well-being.

[10]There is no allegation that Plaintiffs called the police or in any other manner reported the "kidnap" of their stepdaughter into her own room.

### B.    Plaintiffs Are Equally Without Standing to Seek Declaratory Relief.

Standing to seek declaratory relief "is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Valley Forge College v. Americans United for Separation of Church & State*, 454 U.S. 464, 486 (1982).   Rather, a plaintiff must point to an "injury in fact" that a favorable judgment will redress. *Harvey v. Veneman*, 396 F.3d 28, 34 (1st Cir. 2005). "[11]

Plaintiffs are thus without standing to seek the declaratory relief they request, at ¶¶ 218-226, because as a matter of law they sustained none of the injuries they allege, at ¶221a, to have arisen from the statute they challenge, G.L. c, 119, §§51A, B, the child protection laws.

Plaintiffs were not "reported."[12] They cannot have been "publicly named,"[13] because all central registry data is "confidential and shall be made available only with the approval of the commissioner or upon court order." G.L. c. 119, §51F. For the same reasons: their "victim" was not publicly named (nor was there a victim);[14] their "activities" were not disclosed;[15] their "guilt" was not "publicly declared,"[16] nor were they prosecuted, tried, or found "guilty" of anything;

---

[11] An asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen*, 468 U.S. at 754.

[12] ¶221a

[13] ¶221a(1)

[14] In any event, mere damage to reputation does not constitute deprivation of liberty. *Paul v. Davis*, 424 U.S. 693, 701 (1976)

[15] ¶221a(2).

[16] ¶221a(3).

there was neither "judgment" nor "verdict";[17] there was no "punishment,"[18] and by their own allegation, the matter was closed a mere year after it opened.

Plaintiffs are without standing to seek declaratory relief, as they have no injuries to seek relief from, and present no case or controversy to invoke the jurisdiction of an Article III Court.

**C.    The "Domestic Relations Exception" to Federal Jurisdiction Bars This Claim.**

Since *Barber v. Barber*, 62 U.S. (21 How.) 582 (1859), the "federal courts have declined to adjudicate actions for divorce, alimony, child support, child custody, and other 'domestic relations' matters." Fernos-Lopez v. Figarella Lopez, 929 F.2d 20, 22 (1st Cir.1991), citing, Gonzalez Canevero v. Rexach, 793 F.2d 417, 418 (1st Cir.1986).  "The domestic relations exception, as articulated by this Court since *Barber*, divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (emphasis added). A state's compelling interest in protecting the welfare of children warrants federal court abstention. *Malachowski v. City of Keene*, 787 F.2d 704 at 708-709 (1st Cir. 1986), see, *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."), and "federal courts lack power" in this area "because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees." *Ankenbrandt*, 504 U.S. at 704.

This case arises from a report to DSS, under the Massachusetts child protection statutes, G.L. c. 119, §§51A, B, of Plaintiffs' educational neglect of their adopted child. It is a domestic,

---

[17]¶221a(4).

[18]¶221a(5).

family matter traditionally left to the state courts. The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Even were there federal jurisdiction, the Court should abstain, as a matter of comity, from passing on domestic relations issues, in which the state courts' expertise, experience and familiarity with statutes and regulations in this area are recognized.

## II.    HAVING FAILED TO EXHAUST THEIR STATE REMEDIES, PLAINTIFFS HAVE NOT YET BEEN DEPRIVED OF ANY RIGHTS AND STATE NO CIVIL RIGHTS CLAIMS.

Plaintiffs allege deprivation of a panoply of constitutional rights, *inter alia*, due process, equal protection, first, third, fourth, fifth, sixth and fourteenth amendments (under 42 U.S.C. §§1983, 1985, and 1986). ¶5.

In due process complaints, "the constitutional violation actionable under [42 USC §] 1983 is not complete when the deprivation occurs;  it is not complete unless and until the State fails to provide due process."  *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).  One "cannot complain of a violation of procedural due process rights when he has made no attempt to avail himself of existing state procedures." *Boston Environmental Sanitation Inspectors Association,* v. *City of Boston*, 794 F.2d 12, 13 (1st Cir. 1986).  "It is well-settled that a 'claim of lack of available due process fail[s] on the merits [where] there [is] a process available under state law.' *Id*., citing *Limerick v. Greenwald*, 749 F.2d 97, 99 (1st Cir.1984). Courts are not  "'sympathetic to a party who elects to forego the state hearing provided him, and then complains he received none.  *Boston Environmental*,  794 F.2d at 13, quoting *Roslindale Cooperative Bank v. Greenwald*, 638 F.2d 258, 261 (1st Cir.), cert. denied,  454 U.S. 831 (1981) .  *Economou v. Caldera*, 286 F.3d 144, 149 (2nd Cir. 2002) (complaint alleging discriminatory and retaliatory

removal from Army Corps of Engineers in violation of ADEA, Title VII and Rehabilitation Act dismissed for failure to exhaust administrative remedies, where plaintiff actually <u>pursued</u> one of two alternative administrative remedies but fatally switched between them).

In the present case, Plaintiffs have not even invoked the administrative review process, never mind the comprehensive judicial review statutorily available to all persons aggrieved by DSS decisions. Although they claim that they have been denied the fair hearing to which they are entitled, their exhibits -- discussed in detail below -- demonstrate that they have never been thus denied..[19]

Having invoked no post-deprivation remedies, they have not yet been deprived of rights and state no claim for federal relief. *Amsden v. Moran*, 904 F.2d 748 754-57 (1st Cir.1990), cert. denied, 498 U.S. 1041 (1991).[20]

## III.  PLAINTIFFS STATE NO CLAIMS FOR RELIEF UNDER THE RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT (RICO), AS THEIR ALLEGATIONS OF FRAUD ARE INSUFFICIENTLY PLED.

Beside their failure to allege cognizable injury, Plaintiffs RICO claim fails as a matter of pleading.

Plaintiffs allege wire fraud, mail fraud and fraud as the predicate crimes entitling them to RICO relief. Fed. R. Civ. P. 9 applies to these allegations in the RICO context just as it does in

---

[19]Why Plaintiffs refuse to schedule the DSS fair hearing that is still available to them -- Affidavit of Compliance With Local Rule 7.1(A)(2) -- is inexplicable.

[20]This will be the basis for Defendants' qualified immunity defense when raised. *Amsden*, 904 F.2d at 754-57(State officials entitled to qualified immunity on procedural due process claims where adequate remedies were available for their alleged improper deprivation of plaintiff's license).

all pleading. "It is settled in this Circuit that Fed. R. Civ. P. 9(b), which requires pleading with particularity, extends to pleading predicate acts of mail and wire fraud under RICO." *Feinstein v. Resolution Trust Corp.* 942 F.2d 34, 42 (1st Cir. 1991). A plaintiff must "state the time, place and content of the alleged mail and wire communications perpetrating that fraud. *Feinstein*, 942 F.2d at 42, quoting *New England Data Services v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987); *Ahmed v. Rosenblatt,* 118 F.3d 886, 889 (1st Cir. 1997).

Allegations of fraud as predicate to RICO claims "remain subject to the particularity requirements of [Fed. R. Civ. P.] 9(b)." *United States v. Melrose-Wakefield Hospital,* 360 F.3d 220, 227 (1st Cir. 2004). Such allegations are "also subject to the additional requirement that 'the complaint set forth the facts on which the belief is founded.'" *Id*, quoting *New England Data*, 829 F.2d at 288.

The First Circuit recognizes a "relaxed Rule 9(b) standard [under which] fraud may be pled on information and belief." *United States v. Melrose-Wakefield Hospital,* 360 F.3d 220, 228 (1st Cir. 2004). Nevertheless, "we subject 'information and belief' pleading under Rule 9(b) to particularity requirements." "There is, in other words, <u>no</u> relaxation of the particularity requirement for 'information and belief' pleading." *Melrose-Wakefield* at 228. (Emphasis added). That a plaintiff may plead fraud on "information and belief " at <u>all</u> is the "relaxed" approach to 9(b)'s strict, particularity requirement. *Melrose-Wakefield*, 360 F.3d at 228-29. "Relaxation" means fraud may, in certain circumstances, be pled generally, and the complaint amended after discovery. I.e., the plaintiff may

> plead generally at the outset and then later amend the complaint,
> filling in the blanks through discovery.

*Melrose-Wakefield* at 228-29.

However, the circumstances under which fraud may be pleaded this, "relaxed," way are limited to situations "'when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusions.'" *Melrose-Wakefield* at 228-29, quoting *Boston & Maine Corp. v. Hampton*, 987 F.2d 855, 866 (1st Cir. 1993). It is permitted "because of the apparent difficulties in specifically pleading mail and wire fraud as predicate acts...where the specific information concerning the defendants' use of interstate mail or telecommunications facilities is likely in the exclusive control of the defendant." *Melrose-Wakefield* at 229, quoting *North Bridge Association, Inc. v. Boldt*, 274 F.3d 38, 44 (1st Cir. 2001). In such cases, the District Court "'should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint.'" *Melrose-Wakefield* at 229, quoting *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 43 (1st Cir. 1991).

The "relaxed pleading" rule is inapplicable here. The bases of the fraud allegations are letters from Defendants to Plaintiffs, which presumably remain in Plaintiffs' possession. Plaintiffs allege no hidden communications between or among the Defendants themselves which Plaintiffs might at some point have difficulty obtaining Moreover, as discussed below, such of these letters as Plaintiffs attach do not by any standard constitute fraud.

Plaintiffs allege mail and wire fraud at ¶¶ 38-41, 43, 44, 45, etc. They incorrectly contend that these acts are specifically described at "Appendices E, D, C, B, and A."

Appendix A

The only Appendix A allegations against the DSS Plaintiffs occur at ¶XII, and are typical of the pleadings Par. XII alleges a meeting among some DSS Defendants "upon information and belief." The basis for the belief is not given. Pursuant to the plan allegedly hatched at that meeting:

> XIIa. Defendant Senges phones Plaintiffs' doctors to talk them into a special education plan for Samantha..

How this can be construed as fraud, and against whom, Plaintiffs do not allege. It is clear from the Complaint that the school authorities want special education attention for this little girl who, by Plaintiffs' own allegations, starves herself and pulls out her own hair.

> XIIb. Defendant Sullivan "fabricates" a statement from Samantha's psychiatrist to support charges of "medical neglect."

## Appendix B

Appendix B alleges "predicate acts of impeding a criminal investigation." As discussed above, there was no criminal investigation. The only Appendix B reference to the DSS Defendants occurs at Paragraph 2, which paradoxically alleges that the DSS Defendants impeded their own "criminal investigation." Plaintiffs appear to argue that Defendants "expanded" an investigation that might otherwise have found in "Plaintiffs' favor." This is senseless.

## Appendices C & D

Appendices C  and D allege neither fraud nor any communication via wire or mail, nor the content of any such communication.

## Appendix E

Paragraphs 1-19 of Appendix E contain no allegations against the DSS Defendants. The rest of Appendix E offers nothing more than conclusory and argumentative descriptions of

alleged communications. These communications, when Plaintiffs attach them, are always

mischaracterized; on their faces, none are fraudulent.[21]

- **Par. 20 of Appendix E Exhibit L, alleges a "letter" to Plaintiffs from Defendant Senges** which they characterize as notifying them of the pending criminal charges. The "letter" is clearly a form notice of Senges's impending home visit. That there is an allegation of neglect is not accusation of a crime, but Plaintiffs' characterization.

- Par. 21 alleges that Defendant Senges transmitted a letter to Plaintiffs falsely stating that the Department had found reasonable cause to support allegations of neglect. The letter is not attached. The characterization is obviously erroneous because if the letter was false, no neglect was found.

- **Par. 22 alleges Exhibit M, a letter to Plaintiffs from Defendant Barney Keezell, Director of the DSS Fair Hearing Unit.** Plaintiffs mischaracterize this letter as saying they could not receive their fair hearing because of staff early retirement and strained resources. The letter plainly says that Plaintiffs' hearing would merely be delayed because, due to early retirement, DSS was reconfiguring the hearing schedule, but that Plaintiffs would be given a hearing date in the near future. Plaintiffs' alleged reliance on this letter -- "to their very great injury, peril, and loss of their property" -- is unfathomable. The letter deprives Plaintiffs of no rights.

- **Par. 25 alleges Exhibit O, a letter to Plaintiffs from DSS Defendant Erica Cohen, a social worker.** Plaintiffs characterize this letter as "fraudulently" saying that a meeting had not yet been scheduled as well as "fraudulently" saying that Cohen wished to meet with Plaintiffs. Plaintiffs do not say how these statements are false, nor the injury caused by their reliance, and no injury suggests itself.

- **Par. 26 alleges a letter of February 25, 2003 from Defendant Cohen to Plaintiffs' attorney.** Plaintiffs describe this letter as saying that the "Department believes it is appropriate to close your case." The statement is obviously true: Plaintiffs allege that the case was closed the next month. Complaint ¶34.

---

[21]Plaintiffs provide an index of such documents as they attach, immediately following p. 31 of their Appendix, just preceding Exhibit A.

- **Par. 27 alleges Exhibit N, a letter from Defendant Barney Keezel, Fair Hearing Unit director**. Plaintiffs characterize this letter as having deliberately been mailed to the wrong address,. Plaintiffs -- who have litigated this matter from post office boxes, first in Hopkinton MA, now in Easton MA, with a Maine area code -- do not allege their correct address at the time, nor is there any basis to believe that the alleged mistake was deliberate.[22] The letter deprives Plaintiffs of no rights. Plaintiffs' contention that this re-offer of a fair hearing occurred 940 days after their hearing request is both irrelevant and erroneous: DSS closed the case in March, 2003. Complaint ¶34. At the outside, the delay was 17 months, and the re-offer stands in any event. To whatever extent their names have been besmirched, if at all, Plaintiffs have a complete state remedy.

Appendix E shows DSS personnel trying to do their jobs in a garden-variety allegation of neglect. It alleges nothing that could be remotely described as RICO predicates.

The characterizations of these exhibits, as well as the conclusory, argumentative and plainly wrong pleadings throughout the needlessly huge Complaint do not rise even to the low threshold required for pro se pleaders discussed at note 6, *supra*. Plaintiffs bestow no jurisdiction on the Court, have been deprived of no rights, are not cognizably injured, do not meet the pleading requirements of Fed. R. Civ. P. 9, are barred by the "domestic relations exception," and state no claims for relief, under RICO or any other theory. The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

---

[22]Defendants note that each of the Appendix E paragraphs contain a paragraph headed, "CIRCUMSTANCES OF FRAUD OR MISTAKE." Thus every one of these Paragraphs, though purporting to allege fraud, also admits that the contained facts might allege mere negligence, if any wrong at all. A Complaint that admits that Defendants' alleged conduct <u>might</u> be merely mistaken conduct, fails on its face to allege fraud. For this separate reason, Appendix E cannot serve as the basis of a RICO claim.

## CONCLUSION

For the above reasons, the Court should allow this Motion.

**CERTIFICATE OF SERVICE**

I certify that I served one true copy each of the above Motion to Dismiss the Complaint upon both Plaintiffs pro se, via first-class mail addressed to Peter Tinkham, PO Box 466, Hopkinton MA 01748-9998, and Juliet Alexander, PO Box 466, Hopkinton MA 01748-9998, on **October 6, 2005**.

_____/s/_____
Stephen Dick

Defendants,
Erin L. Senges, Barbara A. Hawkes-Sullivan, Barney Keezell, Stephanie Thomas Brown, and Erica Cohen

By Their Attorney,

_____/s/_____
Stephen Dick, BBO #560508
Assistant Attorney General
Trial Division/Government Bureau
1 Ashburton Place
Boston MA 02108
617-727-2200
Fax: 617-727-3076
stephen.dick@ago.state.ma.us

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER TINKHAM, JULIET ALEXANDER, and SAMANTHA TINKHAM, pro se,      Plaintiffs, v. DOREEN R. KELLY, BARRY L. MINTZER, JEAN CURTIS LOUD, ROBERT L. DOYLE, DONNA KYED, MARGARET VERRET, JOAN BERNHEIMER, JUDI ALBERTON, CLAIRE JACKSON, ERIN L. SENGES, BARBARA A. HAWKES-SULLIVAN, BARNEY KEEZELL, STEPHANIE THOMAS, ERICA COHEN, and KENNETH PONTES,      Defendants. | CIVIL ACTION NO. 05-10470-MLW |

**OPPOSITION TO PLAINTIFFS' THREE MOTIONS IN LIMINE AGAINST THE DSS DEFENDANTS**

These are not Motions in Limine.

The Motion seeking "third-party" standing for Plaintiffs' daughter, Samantha, is misplaced. She is not a third party; she can sue through her parents. She cannot be represented by her parents, who are not lawyers.

The papers regarding the scheduling conference and seeking to strike the Defendants' Motions to Dismiss are re-attempts (1) to default the Defendants for not timely answering the Complaint (duplicative of #25-31), and (2) to oppose dismissal (duplicative of #59). Both defendants have interposed dispositive motions. The time DSS spent to comprehend the

H:\AG\1 TRIAL\Tinkham\Motions\Opp Lim\D1.wpd

confusing, redundant pleadings, a task made no easier by their brazen falseness,[1] was not

unreasonable. The Motions should be denied.

## CONCLUSION

For the above reasons, Plaintiffs' Motions in Limine should be denied.

---

[1]It is of dispositive importance that these Motions doggedly re-visit the allegations and Plaintiffs have not backed away from the Complaint's inescapable falsity. The DSS Motion to Dismiss clearly shows that as a matter of law, on these allegations Plaintiffs cannot have been placed on the list of alleged perpetrators, and cannot have been criminally investigated or prosecuted -- whether through the alleged RICO scheme or in any other manner. Yet they refuse to acknowledge or amend the knowing, central, falseness of this matter. Their conduct is sanctionable: the pleadings are voluminous for this stage of the litigation; not only has an entirely frivolous matter preyed upon the Commonwealth's precious resources, it has consternated innocent, assiduously hard-working DSS employees with exposure to individual, financial liability for deprivation of civil rights. It has had the desired effect. They are frightened. Under the circumstances, this knowing, intentionally-false pleading ought not be judicially tolerated, most particularly where the falseness goes to the fulcrum of the Complaint..

**CERTIFICATE OF SERVICE**

    I certify that I served one true copy each of the above Document upon both Plaintiffs pro se, via first-class mail addressed to Peter Tinkham, PO Box 466, Hopkinton MA 01748-9998, and Juliet Alexander, PO Box 466, Hopkinton MA 01748-9998, on **February 1, 2006**

_____/s/_____
Stephen Dick

Defendants,
Erin L. Senges, Barbara A. Hawkes-Sullivan, Barney Keezell, Stephanie Thomas Brown, and Erica Cohen

By Their Attorney,

_____/s/_____
Stephen Dick, BBO #560508
Assistant Attorney General
Trial Division/Government Bureau
1 Ashburton Place
Boston MA 02108
617-727-2200
Fax: 617-727-3076
stephen.dick@ago.state.ma.us